THE STATE v. H. C. GIBSON, Appellant.—15 S. W. (2d) 760.

Court en Banc, March 27, 1929.

John M. Dalton and L. R. Jones for appellant.

*North T. Gentry,* Attorney-General, and *A. M. Meyer,* Special Assistant Attorney-General, for respondent.

372

WHITE, C. J.—By information in four counts filed in the Circuit Court of Dunklin County, defendant was charged with the commission of four distinct felonies. On the plea of defendant counts two and three were abated, and the case went to trial on counts one and four.

The first count charged the defendant with unlawfully and feloniously carrying concealed about his person a deadly weapon, a revolving pistol.

The fourth count charged him with operating a motor vehicle while intoxicated. The trial proceeded on both counts with no motion on the part of the defendant to elect. At the close of its evidence the State elected to dismiss count four, and asked a verdict upon count one. The jury returned a verdict finding the defendant guilty on the first count and assessed his punishment at two years' imprisonment in the penitentiary. From a judgment in conformity with the verdict the defendant appealed.

The evidence throughout the trial tended to show that the defendant was drunk, and more evidence was offered on the fourth count than on the first. It further appeared, incidentally, that the defendant had a bad reputation, his right arm was off, and, according to his own testimony, he lost it in a shooting scrape in Arkansas, where he was convicted of "killing a fellow." All this got before the jury and a great deal of it was entirely irrelevant to the issues tendered on the first count.

The evidence for the State on that count shows that the defendant Gibson, called Clay Gibson, and one Henry Gentry were driving in a Ford car, and drove into a place called Arbyrd. They turned the car at that point and headed west against the walk. The attention of Constable Grooms, a witness for the State, was attracted by the defendant's eccentric driving of the car, whipping the road from one side to the other, which he ascribed to the fact that the defendant was drunk. After the car was stopped, Grooms said he came up on the walk, on the right hand side of the car, and asked the occupants if they had any weapons. Then he told Gentry to get out of the car. Gentry obeyed, and while the defendant was fumbling in his pocket for a knife to give the constable, a pistol fell from his clothes upon the seat of the car. On cross-examination the witness admitted that from where he stood he could not have seen the pistol if it had been lying on the seat. It was concealed

from his view because on the other side of the occupants of the seat. And further in his cross-examination he said:

"After Henry [Gentry] got sober I was talking to him about getting it and getting drunk; and I told him it could have been his gun as easy as it could have been Clay's [Gibson's], the condition it was in."

Defendant's right arm was off and he managed the steering wheel with his left hand.

Mr. Boss Young, a witness for the State, came up to the car about the time Grooms ordered Gentry out of it, stood on the walk somewhat behind Grooms and stated that he saw the pistol in the seat right under the steering wheel when Gibson got out. He was asked if he could see it from the left side of the car in the street. He said he could not say about that; he was not over there.

The defendant when on the stand denied that he had the pistol concealed, and testified as follows:

"Q. Now, Mr. Gibson, you may state that this pistol that they referred to here, where that was at that time, as you were there at Arbyrd, where was it laying? A. Laying on the left hand side of my car, in the seat.

"Q. Down in the seat? A. Yes, sir.

"Q. On top of the seat? A. Yes sir.

"Q. Was it in view there on top of the seat? A. Yes sir."

The defendant also introduced two or three witnesses who testified that Grooms had said he didn't take a gun off of the defendant, that he found it lying on the car seat, and that was the first he saw of it.

I. The case was carried through from start to finish on the two counts. A great quantity of evidence was introduced to prove that the defendant was driving the car while intoxicated. At the close of the evidence the State chose to dismiss the charge on that count. The defendant can now take no advantage of that because the trial proceeded in that way without objection. The court gave no instruction directing the jury to disregard evidence of that kind—a more serious charge than the one upon which he was convicted.

It appeared further that the defendant was a fighting man; that he had lost his arm in a brawl in Arkansas, where he had supposedly killed a man and had been convicted for it. The severe penalty assessed by the jury was no doubt due more to the fact that the defendant had a bad reputation and was guilty of other offenses than to the cogency of the evidence to sustain the charge upon which he was

374

convicted. For that reason it is important to consider whether the court committed error in instructing the jury in regard to this charge

II. No doubt a revolver was on the seat of defendant's car, but the evidence is conflicting as to whether it was concealed intentionally from the view of the sheriff or any other person passing the car. As seen by the evidence noted above, the constable himself told conflicting stories about it, and his own evidence at the trial was far from clear that the weapon was concealed. Defendant's testimony was to the effect that it was not concealed, but that it was lying on the seat, in view. On that evidence the court gave Instruction 2, which contains the following:

"The court instructs the jury that if you find and believe from the evidence in this case that at the County of Dunklin in the State of Missouri, on or about the 21st day of October, 1925, the defendant did feloniously carry concealed upon or about his person a revolving pistol, and if you further find that the said pistol was then and there a deadly or dangerous weapon, then you will find the defendant guilty as charged in the first count of the information."

It then defines feloniously, as follows:

"The word 'feloniously' as used above, means against the solemn admonition of the law. It is also used to designate the grade of the offense."

It is followed by Instruction 3, as follows:

"The court instructs the jury that it is not necessary that the revolving pistol should be in the defendant's pocket of his clothing to constitute it a concealed weapon about his person. If you find and believe from the evidence beyond a reasonable doubt that the revolving pistol was behind his body, or under his body, or beside his body, on a seat of an automobile and concealed from view, so that it could not be seen, *then in either case such weapon was a concealed weapon upon his person within the meaning of the law;* if you further find beyond a reasonable doubt that such weapon was in such close proximity to the defendant as to be within reach and convenient control of said defendant at the time."

That instruction, it will be noticed by the words we put in italics, informs the jury that the weapon is concealed upon his person, whether it is in fact upon his person or not.

Aside from the incorrectness of that postulate the instruction does not require the jury to find the defendant *intended* to conceal the weapon. It is suggested that the act itself carries with it the presumption of the intent. Doubtless that would be true if the defend-

ant consciously concealed the weapon. The instruction does not require the jury to find that he concealed it purposely or consciously, or *that he concealed it;* the condition in the instruction would be met if his companion concealed it. There are many circumstances under which it might be *hidden* about his person without intention to conceal it, or any agency of his in having it concealed. Defendant testified that he had the weapon and that it was lying on the top of the seat at his left, *in view.* He was driving the car with his left hand, his right arm being off.

In State v. Carter, 259 Mo. 349, where a similar state of facts occurred, the defendant asked this instruction:

"To conceal a weapon means something more than carrying it or the mere fact of having it where it may not be seen; it implies an assent of the mind and a purpose to carry it so that it may not be seen."

In that case the State's evidence tended to show that the defendant walked down the street with a revolver partly in his pocket. The defendant's evidence tended to show that it was not concealed; that defendant did not intend to conceal it, and that a portion of it protruded above the pocket. The court then held that the intention to conceal was an issue of fact and an instruction should have been given to that effect. The judgment was reversed and the cause remanded for failure to give such instruction.

The question arose in the case of State v. Baumann, 311 Mo. 443, where Judge BLAIR (1. c. 451), used this language: "If defendant or any other witness had testified that she had the revolver upon her person, but that same was not concealed, or, if concealed, that she had no intention to conceal it, a far different situation would exist," and cites and quotes from the Carter case.

In the case of State v. Jackson, 283 Mo. 1. c. 27, this court approved an instruction given for the defendant which declared that carrying a concealed weapon implies a consent of the mind and purpose to carry it concealed.

Instruction numbered 2 directs a verdict if the defendant "feloniously" carried a concealed weapon, and defines "feloniously" correctly, as "against the solemn admonition of *the law.*"

The jury naturally would want to know what the *law is.* They had not been told. Then instruction numbered three erroneously defines a violation of the *"law."* An erroneous definition of what constitutes a violation of the law which the defendant is charged with violating is reversible error. The error is aggravated by the handicaps under which defendant labored.

III. The defendant offered evidence to show that his life had been threatened immediately prior to the offense charged in the informa-

tion and that at some time prior to that he had been shot, causing amputation of his right arm, and that the same party who shot him at that time had since threatened his life. This ▮▮▮▮▮ was not offered as a defense because it constituted no defense under Section 3275, Revised Statutes 1919. Defendant offered it in mitigation. If the defendant's life was threatened in such way that he felt obliged to carry a weapon in self-defense, it would not justify him in carrying the weapon concealed. He is not charged with carrying a weapon, but charged with carrying it concealed. His revolver would have been as efficient protection to him, probably more so, if he had carried it in view than if he carried it concealed. For that reason the evidence was properly excluded.

For the reasons mentioned the judgment is reversed and the cause remanded. All concur, except *Blair* and *Walker, JJ.*, who dissent.