STATE of Missouri,
Plaintiff-Respondent,

v.

Robert Earl PAYNE,
Defendant-Appellant.

No. 45234.

Missouri Court of Appeals,
Eastern District,
Division One.

May 3, 1983.

Motion for Rehearing and/or Transfer
Denied July 6, 1983.

Ellen F. Watkins, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Appellant was convicted of carrying a dangerous or deadly weapon about his person under § 571.115 RSMo 1978, (transferred from § 564.610 in 1978; now repealed) by a jury and his punishment under the Persistent Offender Statute, § 558.016, was assessed at imprisonment of ten years, to run consecutive to a sentence being served on a conviction in the city of St. Louis, Missouri.

The amended information charged appellant violated § 571.115 RSMo 1978, "in that . . . the defendant carried concealed on or about his person and within easy reach and convenient control a dangerous or deadly weapon, to wit: a firearm."

On April 21, 1980 at 12:00 noon, police officer Jay Titchen was on routine patrol in the city of University City, Missouri. He made eye-contact with appellant who was seated in a motor vehicle. At that time appellant slumped down in his seat. The officer ran a license plate number check on the motor vehicle and found it registered to an address in the city of St. Louis. Officer Titchen parked behind appellant's vehicle and was joined by officer Richard Thompson. Both officers approached appellant's vehicle. The officers' testimony best describes what occurred next:

Officer Titchen testified as follows:

Q. And what if anything did you do at that time?

A. . . . We both looked into the automobile, observed the subject and *also observed what appeared to be a butt of a gun* that was *visible* to us underneath the armrest of the automobile.

.    .    .    .    .

Q. Okay. Did you actually seize the gun or who seized it?

A. After both patrolman *Thompson and I observed the gun* I had Mr. Payne step out of the vehicle and I took control of him . . . .

.    .    .    .    .

Q. Are you saying that the minute that you arrived there at the car you saw the butt of the gun?

A. *As soon as we* looked into the automobile we saw the butt of *the gun,* yes.

.    .    .    .    .

Q. Mr. Titchen, you're saying if I understand you correctly that the minute you approached the car you saw the butt of the gun sticking out from the armrest?

A. As long as it takes for a person to look in the car, yes. (emphasis added)

Officer Thompson testified as follows:

Q. What if anything did you observe when you arrived at that location?

A. I pulled my vehicle behind Officer Titchen's and we both exited the vehicle at the same time or approached the suspect vehicle, at which time the suspect was sitting in that vehicle and upon looking inside the vehicle and past the subject *I observed what appeared to be the butt of a pistol* sticking out from underneath the armrest.

.    .    .    .    .

Q. And when you got there what if anything did you do?

A. Upon approaching the vehicle and seeing that there was what appeared to be a weapon under the armrest, Officer Titchen removed the suspect from the

vehicle at which time I went inside the vehicle and lifted the armrest up and observed a revolver.          *

.          .          .          .          .

Q. Do you recall whether or not you saw the butt of the gun first or whether or not he saw it first?

A. I believe *I saw it* before Officer Titchen did.

Q. And what exactly did you see at that time?

A. I looked into the vehicle and across the suspect that was sitting there and upon looking into the front seat the armrest was laid down and there was what appeared to be *the butt of a gun* protruding from underneath the armrest to the right of the driver. (emphasis added)

The state's verdict directing instruction required the jury to find, "That the defendant carried the firearm so that it was not discernible by ordinary observation, . . . ." The court overruled defendant's motions for judgment of acquittal at the close of all the evidence and for judgment of acquittal notwithstanding the verdict. Both motions contended that the state failed to make a submissible case.

■ Our review is limited to determining whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. *State v. Longmeyer*, 566 S.W.2d 496, 499 (Mo. App.1978); *State v. Johnson*, 510 S.W.2d 485, 487 (Mo.App.1974). Because we conclude that the evidence was not sufficient to sustain a finding that appellant had a dangerous or deadly weapon concealed on or about his person on the occasion charged, we independently review this issue as plain error. Whether briefed or not this court may consider plain errors affecting substantial rights when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. Rule 30.20.

"In Missouri, concealment is an essential element of the offense charged. *State v. Duggins*, 284 Mo. 633, 225 S.W. 987. 'Generally, the test of concealment is whether the weapon is so carried as not to be dis-cernible by ordinary observation.' *State v. Bordeaux*, Mo.Sup., 337 S.W.2d 47, 49." *State v. Tate*, 416 S.W.2d 103, 105 (Mo. 1967); *see also State v. Williams*, 481 S.W.2d 1, 3 (Mo.1972) and *State v. Gibson*, 322 Mo. 369, 15 S.W.2d 760 (banc 1929) for cases reversing convictions for carrying a concealed weapon where the weapon was discernible by ordinary observation, in plain sight, or in view.

■ The state's evidence as to whether the firearm was concealed was clear, direct, consistent and undisputed. It affirmatively and directly proved that the weapon was not concealed and was discernible by ordinary observation. The state's brief candidly acknowledges that "The two officers approached appellant's window to ask for identification and saw the butt of the gun partially hidden under the appellant's armrest." By their unequivocal testimony, both officers approached appellant's vehicle, in broad daylight, and observed a recognizable part of the firearm in plain view. Section 571.115 does not prohibit carrying a partially concealed, dangerous or deadly weapon. It prohibits carrying a concealed weapon.

We hold the state's evidence insufficient to prove appellant guilty of the offense. The evidence amounted only to a showing that appellant had an opportunity to carry the weapon concealed, and under such circumstances, the verdict cannot stand. *State v. Tate*, 416 S.W.2d 103, 105 (Mo. 1967). The trial court should have directed a verdict of acquittal. Failure to do so resulted in manifest injustice warranting relief under plain error. Rule 30.20.

The judgment is reversed.

STEPHAN, P.J., concurs.

SATZ, J., dissents in separate opinion.

SATZ, Judge, dissenting.

I dissent. The majority, sua sponte, concludes the state proved itself out of court. More specifically, the majority concludes the police officers' testimony, quoted by the majority, proves "the weapon [in issue] was

**142**

not concealed and was discernible by ordinary observation." I disagree.

On direct examination, Officer Titchen testified: "We [1] both looked into the automobile, observed the subject and also observed what *appeared to be a butt of a gun* that was visible to us underneath the arm rest of the automobile." [Emphasis added]. To me, the phrase "appeared to be" is not a circumlocution for and, thus, is not equivalent to the word "saw." The phrase "appeared to be" indicates uncertainty about what was observed and, thus, implies that the "butt of a gun" was not discernible by ordinary observation. Admittedly, Titchen's testimony on cross-examination contradicts his uncertainty and the resulting implication. On cross-examination, Titchen testified: "As soon as we looked into the automobile we *saw the butt of the gun* ...." However, even giving this contradiction the most favorable effect for defendant, the contradiction would, at best, simply vitiate Titchen's direct testimony on the issue of concealment, *see, e.g., Adelsberger v. Sheehy,* 59 S.W.2d 644, 647 (Mo.1933) and would do nothing more than render Titchen's testimony on that issue meaningless. *Id.* at 647. Sensibly, then, Titchen's testimony could not mean either he saw what "appeared to be" the butt of a gun or that he actually "saw" the butt of a gun. Thus, his testimony simply would not be probative to show whether the weapon was discernible by ordinary observation.

On the other hand, Officer Thompson's testimony on direct and cross-examination was consistent. He stated he observed "what appeared to be the butt of a pistol," or, "what appeared to be the butt of a gun." I take it that Thompson meant what he said. He was uncertain about what he saw. By stating he observed what "appeared to be" the butt of a gun does not mean he meant to say he "saw" the butt of a gun. Thus, I cannot conclude that the state proved the butt of a gun "was discernible by ordinary observation."

---

[1]. No objection was made to Titchen's use of the term "we" rather than "I" to describe what he saw. I take Titchen's use of the word "we" to mean what "he" saw. Apparently, so does

the majority, for its conclusion does not turn on Titchen's misuse of the word "we" as affecting Thompson's testimony.