STATE of Missouri, Respondent,

v.

Thomas E. ROWE, Jr., Appellant.

No. WD 58691.

Missouri Court of Appeals,
Western District.

Jan. 29, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane D. Crouse, Asst. Atty. Gen., Jefferson City, for respondent.

John M. Schilmoeller, Asst. Appellate Defender, Kansas City, for appellant.

Before SPINDEN, C.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Thomas E. Rowe, Jr., appeals his jury conviction in the Circuit Court of Clay County of unlawful use of a weapon, § 571.030.1(1),[1] for which he was sentenced as a prior and persistent offender, § 558.016, to five years in the Missouri Department of Corrections. The charge of which the appellant was convicted arose out of the seizure of an alleged concealed six-inch knife during a search of his vehicle.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his pretrial motion to suppress and in admitting at trial the knife seized during the search of his vehicle because it was the product of an illegal search and seizure. In Point II, he claims that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence because the State failed to prove, as required by due process, each and every element of the offense of unlawful use of a weapon as charged in that the evidence was insufficient from which a reasonable jury could find that the knife seized was concealed.

We affirm.

## Facts

On June 19, 1998, Trooper Jeffrey D. Spire of the Missouri Highway Patrol was dispatched to investigate a one-car acci-dent that occurred near the intersection of Watershed Road and Route O in Lafayette County, Missouri. After arriving at the scene of the accident at approximately 11:00 a.m., Trooper Spire noticed that the driver of the vehicle, Vicki Jackson, had an injury to her mouth and blood on her shirt. However, upon inspecting Jackson's van, he did not find any blood in the vehicle, although he did observe a burnt glass tube on her floorboard, which appeared to be a methamphetamine pipe. Believing that Jackson did not suffer her injury as a result of the accident, Trooper Spire asked her how she sustained her injury. She told him that she had been assaulted by James Gall at a residence on Watershed Road. Trooper Spire placed Jackson under arrest for possession of drug paraphernalia and instructed a deputy of the Lafayette County Sheriff's Department to transport her to the Lafayette County Jail.

Trooper Spire, accompanied by Deputy Derrick Morgan of the Lafayette County Sheriff's Department, then drove to the residence on Watershed Road where Jackson claimed that she had been assaulted. Upon arriving there, Trooper Spire and Deputy Morgan walked to the front door and knocked several times before anyone answered. Finally, a young man came to the door, and Trooper Spire asked him if he was James Gall. The man mumbled something unintelligible, and when the trooper asked him if he would step out onto the porch and show some identification, he yelled, "Holy shit!" and ran back into the house. Believing that the subject was Gall, Trooper Spire and Deputy Morgan both drew their guns and chased the man into the residence. Just before they caught him near a bedroom door, Trooper Spire and Deputy Morgan observed the

1. All statutory references are to RSMo 2000, unless otherwise indicated.

subject toss something toward the bedroom, which turned out to be a clear plastic bag containing methamphetamine. The subject, later identified as Jeremiah Mattney, was eventually forced to the floor and handcuffed.

While subduing Mattney, Deputy Morgan observed several guns in the residence. In that regard, he discovered a sawed-off twelve-gauge shotgun and a defaced .25 caliber automatic pistol located under a nearby couch. At some point, Trooper Spire and Deputy Morgan heard a noise outside and went out to investigate. Two people, who identified themselves as Randy Lillard and Amy Harvey, were observed walking toward the house. Lillard, upon questioning from the officers, disclosed that he was currently renting the house from the owner. Lillard was handcuffed and remained in the custody of Deputy Morgan, while Trooper Spire accompanied Harvey inside the house.

Once inside the house, Trooper Spire learned that Mattney and Harvey were brother and sister. While interrogating the subjects, the trooper noticed a purse sitting on the floor, and he asked Harvey if it belonged to her. Harvey answered "Yes." Trooper Spire then searched the purse to ensure that it did not contain any weapons. In searching the purse, Trooper Spire found a cigarette box. Upon noticing that the box had an unusual weight to it, he opened it up and discovered a bag containing what appeared to be methamphetamine. The trooper then placed Harvey under arrest and led her and Mattney out to the front porch. Deputy Morgan left to obtain a warrant to search the house, while Trooper Spire and Deputy Posey, another deputy from the Lafayette County Sheriff's Department, stayed behind with the three suspects. Two members of the Lafayette County Narcotics Enforcement Team, Deputies Moser and Elliott, who were not in uniform, later arrived to assist.

While the officers were waiting for Deputy Morgan to return with a search warrant, a pickup truck, driven by the appellant, pulled into the driveway. Trooper Spire and Deputy Moser approached the truck just as the appellant and his passenger, John Cockrill, were exiting. Trooper Spire identified himself and Deputy Moser to the two men and asked them, "Can we help you with anything?" The appellant advised the officers that he had come to see his girlfriend, Amy Harvey. Trooper Spire asked the two men if he and Deputy Moser could conduct pat-down searches of their persons to determine if they were carrying any weapons. Each man consented. Trooper Spire patted-down Cockrill, while Deputy Moser patted-down the appellant. Prior to Deputy Moser's patting-down the appellant, the appellant asked him if he would still get in trouble "if he was honest." Deputy Moser informed the appellant that "you need to be honest and we will see what happens from there." The appellant advised Deputy Moser that he had a "roach," marijuana cigarette, in his shirt pocket. Deputy Moser told the appellant to remove it. The appellant then pulled out a plastic bag, which contained enough marijuana to make several marijuana cigarettes. As a result, the appellant was handcuffed and placed under arrest for possession of marijuana.

When asked by Trooper Spire if there was any contraband in his vehicle, the appellant indicated that there was nothing illegal in his truck. The trooper then asked the appellant for permission to search the vehicle. The appellant gave the trooper consent to search. Trooper Spire opened the driver's side door and got into the driver's seat. The trooper found a marijuana cigarette in the ashtray. He

also noticed something wrapped in green electrical tape sticking out of the driver's side door pocket. This unidentified object was almost entirely covered with audiocassette tapes. The trooper reached down and pulled the object out. It was then that he realized that the taped object was the handle of a six-inch knife.

The appellant was charged in the Circuit Court of Lafayette County with conspiracy to manufacture methamphetamine and unlawful use of a weapon.[2] On February 10, 1999, after a change of venue to Clay County,[3] the State dismissed the conspiracy charge. On November 15, 1999, the appellant filed a motion to suppress any and all physical evidence seized during the search of his pickup on June 19, 1998, and any statements he made to the police as a result of his arrest. In his motion, he alleged that Trooper Spire in questioning him had unlawfully detained him because he had no reason at the time to believe that he had committed or was committing a crime, and, therefore, his subsequent consent to search his vehicle was tainted such that the resulting search of his truck and seizure of the knife were unlawful. The appellant's motion was heard and overruled on November 16, 1999. At the hearing, Trooper Spire was the only witness to testify.

On January 12, 2000, the State filed its first amended information to charge the appellant, as a prior and persistent offender, § 558.016. The appellant's case proceeded to a two-day jury trial commencing on January 18, 2000. In its case-in-chief, the State introduced the knife, over the appellant's objection. The appellant objected to its admission on the basis that it was seized during an unlawful search of his vehicle in that it resulted from Trooper Spires's initial unlawful detention of his person. At the close of the State's case, the appellant moved for a judgment of acquittal, which motion was overruled. At the close of all the evidence, the appellant again moved for judgment of acquittal, which motion was also overruled. The case was submitted and after deliberation thereon, the jury returned a guilty verdict on the unlawful weapons charge. On February 14, 2000, the appellant filed a motion for new trial, which was heard and overruled on March 10, 2000. The appellant was then sentenced, as a prior and persistent offender, to five years in the Department of Corrections.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in overruling his pretrial motion to suppress and in admitting at trial the knife seized during the search of his vehicle because it was the product of an illegal search and seizure.[4] Specifically, he claims that, although he consented to the search of his vehicle, which led to the discovery and seizure of the knife, the consent and subsequent search occurred after he had been initially illegally de-

2. The record on appeal does not contain a copy of the information charging the appellant in the Circuit Court of Lafayette County.

3. The record on appeal does not contain a copy of the order changing venue to Clay County.

4. In his motion, the appellant sought to suppress all of the evidence seized during the pat-down search and the search of his vehicle, which would have included the knife and the marijuana. However, the State never offered at trial the marijuana such that the only item sought to be suppressed that was actually admitted at trial was the knife. Hence, although the appellant in his point relied on speaks in terms of the "challenged evidence," without specifically referencing the knife, the only issue presented is whether the trial court erred in failing to suppress the knife.

tained or seized for questioning, such that they were "tainted," invalidating his consent and rendering the knife fruit of the poisonous tree subject to suppression pursuant to the Fourth Amendment. In claiming that he was unlawfully detained or seized, the appellant contends that Trooper Spire's approaching him at the residence on Watershed Road, immediately after he had exited his truck, and questioning him, constituted a seizure subject to Fourth Amendment protection, and that it was done without probable cause or reasonable suspicion of criminal activity. For its part, the State contends that the initial encounter between the appellant and Trooper Spire was not a seizure subject to Fourth Amendment protection, but was a consensual encounter such that the trooper did not have to have probable cause or a reasonable suspicion of criminal activity to question him. From this, the State contends that the appellant's consent to search his vehicle was valid such that the subsequent search of the vehicle was consensual and the seizure of the knife was lawful. Thus, as framed by the parties, the issue we must decide, in determining whether the trial court erred in overruling the appellant's pretrial motion to suppress, is whether there is sufficient evidence in the record to support a finding by the trial court that the initial encounter between the appellant and Trooper Spire was consensual.

▮▮▮ Where, as here, a criminal defendant's pretrial motion to suppress evidence is overruled, and the defendant objects to the admission of the evidence at trial, we will review the denial of the motion. *State v. Williams*, 9 S.W.3d 3, 11 (Mo.App.1999). In reviewing the denial of a motion to suppress, we are limited to a determination of whether it is supported by substantial evidence. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. *banc* 1998). " 'The trial

court's ruling on a motion to suppress is reversed only if it is clearly erroneous. The trial court's ruling is clearly erroneous if we are left with a definite and firm belief a mistake has been made.' " *State v. Hunter*, 43 S.W.3d 336, 340 (Mo.App.2001) (*quoting State v. Leavitt*, 993 S.W.2d 557, 560 (Mo.App.1999)). "In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are to be viewed in a light most favorable to the ruling of the trial court." *State v. Carter*, 955 S.W.2d 548, 560 (Mo. *banc* 1997) (*citing State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. *banc* 1992)). While we must defer to the trial court's factual findings and credibility determinations in ruling on the motion to suppress, we review questions of law *de novo*. *Rousan*, 961 S.W.2d at 845.

▮▮▮ The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure from unreasonable searches and seizures. U.S. CONST. amend. IV. Missouri's corresponding constitutional search and seizure provision, found in Mo. CONST. art. I, § 15 of the Missouri Constitution, is co-extensive with the Fourth Amendment. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. *banc* 1999). However, as the State contends, not all personal intercourse between an individual and a law enforcement officer involves a seizure of the individual which is subject to Fourth Amendment protection. *State v. Werner*, 9 S.W.3d 590, 600 (Mo. *banc* 2000). "For Fourth Amendment purposes, a 'seizure' [of a person] occurs 'whenever a police officer accosts an individual and restrains his freedom to walk away.' " *Id.* (*quoting Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968)). " 'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "sei-

zure" has occurred.' " *Id.* Where a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and not a seizure that requires a reasonable suspicion of criminal activity to detain the person. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991); *State v. Scott,* 926 S.W.2d 864, 869 (Mo.App.1996).

■■■ " 'There is no litmus paper test for distinguishing a consensual encounter from a seizure[.]' " *State v. Solt,* 48 S.W.3d 677, 680 (Mo.App.2001) (*quoting Scott,* 926 S.W.2d at 869). When determining whether an encounter was consensual, " 'a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' " *Id.* at 680–81 (*quoting Bostick,* 501 U.S. at 439, 111 S.Ct. at 2389, 115 L.Ed.2d at 401–02). Although not an exclusive list, factors to consider are " 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Scott,* 926 S.W.2d at 869 (*quoting U.S. v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)).

■■ In disputing the State's contention that his initial encounter with Trooper Spire was consensual, the appellant points to several circumstances which he argues would have indicated to a reasonable person that he or she was not free to leave without answering the trooper's questions. In that regard, the appellant first points to the fact that when he arrived on the scene he found "no fewer than *two* police cars in the driveway and *two* officers approaching him as he parked his truck." (Emphasis added.) The record would reflect, however, that only Trooper Spire's patrol vehicle was marked and only he was in uniform. The appellant also points to the fact that · immediately after he exited his truck, Trooper Spire asked him why he was there, although the trooper testified at the motion hearing that when he initially approached the appellant, he asked, "Can we help you?" The appellant also makes much of the fact that after he had told the trooper that he was there to see his girlfriend, the trooper did not advise him that she was under arrest or tell him that he was free to go before asking permission to conduct a pat-down search. As to Trooper Spire's failure to tell the appellant that his girlfriend was under arrest, we fail to see how that would have contributed to a reasonable belief by the appellant that he was not free to go. To argue that point, the appellant would have to argue that had he known of his girlfriend's arrest, he would have understood that he was free to go and was not compelled to cooperate with Trooper Spire. At best, from the appellant's standpoint, knowing about his girlfriend's arrest may have alerted him to the fact that it was not in his best interests to answer any questions or consent to the search of his vehicle, but it was irrelevant to any understanding of whether he was free at any time to terminate the encounter with the trooper. As to Trooper Spire's failure to expressly tell the appellant that he was free to go, that does not persuade us. While it might be desirable from a citizen's standpoint for a law enforcement officer to expressly announce when he or she is free to terminate an encounter with the officer to prevent any confusion on that point, we know of no such requirement in the law. The only question in determining whether an en-

counter is consensual is whether a citizen, who has not been told by an officer that he or she is free to leave, would reasonably believe otherwise, based on the totality of the circumstances.

In contending that Trooper Spire's initial encounter with the appellant was consensual, the State first points to the fact that, unlike in the case of a traffic stop, Trooper Spire did not force the appellant's vehicle to stop with an express and obvious show of authority. Rather, as a result of already being on the scene for purposes unrelated to the appellant, the lawfulness of which the appellant does not challenge on appeal, Trooper Spire observed him exiting his vehicle and approached him in a non-threatening manner, asking him if he and Deputy Moser could help him. After the appellant indicated that he was there to see his girlfriend, the officers then asked him for identification and whether he would consent to a pat-down search for weapons. At that time, neither Trooper Spire nor Deputy Moser had his weapon drawn nor did they touch the appellant or use language or a tone of voice indicating that he was not free to leave at any time without answering their questions or complying with their requests.

Considering all the circumstances surrounding Trooper Spire and Deputy Moser's initial encounter with the appellant and applying the factors set forth in *Mendenhall*, we cannot say that a reasonable person in the appellant's position would not have felt free to leave without answering the questions posed by Trooper Spire or complying with his requests for consent to search. As the State points out, other than Trooper Spire's being in uniform and the presence of his marked patrol vehicle, there was no express show of police authority. Neither Trooper Spire nor Deputy Moser ever touched the appellant, brandished their weapons, or used a tone of

voice or language that would have indicated to a reasonable person that he or she was required to submit to their authority. Thus, there was sufficient evidence in the record to find that the initial encounter between the appellant and Trooper Spire was consensual and not subject to Fourth Amendment protection.

As noted, *supra*, in claiming that the seizure of the knife during the search of his vehicle was unlawful, the appellant does not dispute the fact that he consented to the search. Rather, he contends that his consent was "tainted" and, therefore, invalidated, rendering the subsequent search and seizure unlawful, by the fact that the initial encounter with Trooper Spire was an unreasonable seizure prohibited by the Fourth Amendment. Having found that the initial encounter between the appellant and the trooper was consensual, the appellant's claim of error in this point is without merit.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence because the State failed to prove, as required by due process, each and every element of the offense of unlawful use of a weapon as charged in that the evidence was insufficient from which a reasonable jury could find that the knife seized was concealed. Specifically, he claims that the evidence was insufficient to show that the knife was concealed for purposes of § 571.030.1(1) in that the credible evidence demonstrated that the handle of the knife protruded from the driver's side door pocket such that the knife was readily discernable through ordinary observation. The State contends that the evidence presented at trial clearly indicated that the knife seized from the appellant's vehicle

was concealed for purposes of § 571.030.1(1) because: (1) it was not readily observable to someone approaching the vehicle and (2) the protruding handle was not recognizable as a part of a weapon.

When reviewing a challenge to the sufficiency of the evidence, our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998) (citation omitted). "When reviewing the sufficiency of [the] evidence supporting a criminal conviction, the [c]ourt does not act as a ' "super juror" with veto powers,' but gives great deference to the trier of fact." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (*quoting State v. Grim*, 854 S.W.2d 403, 414 (Mo. banc 1993)). "Thus, in our review, all evidence favorable to the State and all reasonable inferences drawn therefrom will be accepted as true, and all evidence and inferences to the contrary will be disregarded." *State v. Bradshaw*, 26 S.W.3d 461, 466 (Mo.App.2000) (citations omitted).

As a matter of due process, in order to convict a criminal defendant of a crime, the State must prove beyond a reasonable doubt each and every element of the crime charged. *State v. Dudley*, 51 S.W.3d 44, 51 (Mo.App.2001). Here, the appellant was charged by information with the class D felony of unlawful use of a weapon, in violation of § 571.030.1(1). Section 571.030.1 provides, in pertinent part: "A person commits the crime of unlawful use of weapons if he or she knowingly: (1) Carries concealed upon or about his person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use[.]" In its information, the State alleged that:

Thomas E. Rowe, Jr., acting either alone or knowingly in concert with others, in violation of Section 571.030.1(1), RSMo, committed the Class D felony of Unlawful Use of a Weapon, punishable upon conviction under Section 558.011.1(4) and 560.011, RSMo, in that on or about the 19th day of June, 1998, in the County of Lafayette, State of Missouri, the defendant, acting either alone or knowingly in concert with others, knowingly carried concealed upon or about his person a knife.

Thus, to convict the appellant under § 571.030.1(1) as charged, the State was required to show, *inter alia*, beyond a reasonable doubt that the knife was "not readily and practically visible to a person approaching the vehicle under ordinary circumstances" and was within easy reach of the appellant. *State v. Purlee*, 839 S.W.2d 584, 591 (Mo. banc 1992).

In this point, the appellant only challenges the sufficiency of the evidence to show that the knife was not readily and practically visible to a person approaching the vehicle under ordinary circumstances. "[T]he 'test of concealment is whether a weapon is so carried as not to be discernable by ordinary observation.'" *State v. Howard*, 973 S.W.2d 902, 906–07 (Mo.App.1998) (*quoting Purlee*, 839 S.W.2d at 590). " 'A weapon is not concealed simply because it is not discernable from a single vantage point if it is clearly discernable from other positions.' " *Id.* at 907. " 'It may be concealed, however, where it is discernable only from one particular vantage point.' " *Id.*

In claiming that the evidence was insufficient to establish that the knife was concealed because its handle was clearly visible to Trooper Spire, the appellant primarily relies upon *State v. Payne*, 654 S.W.2d 139 (Mo.App.1983), in which the defendant was convicted of carrying a

concealed weapon. There, two St. Louis police officers, while investigating what they believed to be suspicious behavior by an occupant of a parked motor vehicle, observed under the armrest what readily appeared to be the butt of a gun that was visible to them as they stood outside the vehicle. *Id.* at 140. On appeal, the defendant claimed that the evidence was insufficient to show that the weapon was concealed. Alluding to the officers' unequivocal testimony that they "approached [the defendant's] vehicle, in broad daylight, and observed a recognizable part of the firearm in plain view," the court reversed, finding that the evidence "affirmatively and directly proved that the weapon was not concealed and was discernible by ordinary observation." *Id.* at 141.

The appellant's reliance on *Payne* is misplaced in that its facts are clearly distinguishable from those in the case at bar. In *Payne*, both officers testified that they could clearly see what appeared to be the butt of a gun in plain view under the armrest as they stood outside the defendant's vehicle. *Id.* at 140. Here, Trooper Spire testified that he could not observe any weapon inside the appellant's truck as he initially approached it. It was only when he entered the vehicle to search for contraband that he was able to observe an *unidentified* object wrapped in green electrical tape sticking out from under some cassette tapes lying in the driver's side door pocket. The trooper, unsure as to the identity of this taped object, removed it from the door pocket and then discovered that it was the handle of a six-inch double-edged knife. Therefore, not only was the handle of the weapon not readily observable from outside the vehicle, but the trooper, unlike in *Payne*, even after observing what was later identified as the handle to a six-inch knife, was unable to recognize that the taped handle was a part

of a weapon until he removed it from underneath the cassette tapes.

In contending that the evidence was sufficient for the jury to find that the knife was concealed for purposes of § 571.030.1(1), the State cites us to *State v. Purlee,* 839 S.W.2d 584 (Mo. *banc* 1992). In *Purlee,* a trooper pulled a van over for speeding and, after arresting the driver and passenger, searched the vehicle. *Id.* at 586. Although he did not see it when he initially stopped the van, the trooper found a .38 caliber revolver lying on the floorboard between the front two seats. *Id.* While the weapon was not covered with anything, it was only visible by entering the van and looking over the passenger seat. *Id.* The driver was later charged with and convicted of unlawful use of a weapon, under § 571.030.1(1). On appeal, the defendant claimed that the State did not produce sufficient evidence to prove that the weapon was concealed from ordinary observation. *Id.* at 589. Upholding the appellant's conviction, the Missouri Supreme Court found that the gun in the appellant's van was concealed, stating:

> [A] weapon being carried in a vehicle is concealed within the meaning of the unlawful use statute whenever the weapon is (1) not readily and practically visible to a person approaching the vehicle under ordinary circumstances and (2) within easy reach of any of the vehicle's occupants and (3) if the weapon is a firearm, it is operational and loaded, or if not loaded, ammunition is within easy reach of any of the vehicle's occupants.

*Id.* at 591.

Here, the dispute is over whether the knife was readily and practically visible to a person approaching the vehicle under ordinary circumstances. As to that issue, Trooper Spire testified at trial, on direct examination by the State:

Q: ... You stated that you found this [knife] in the door pocket, I forget your wording?

A: Yes, the driver's pocket of the door.

Q: Okay, and you testified it was concealed. How was this concealed?

A: There was cassette tapes and other items placed on top of it. The knife was actually in the door pocket. This is the pocket, (indicates) here. It's a plastic molded door pocket. The knife was placed down in here where tapes and such stacked here with the handle visible and readily removed as a weapon.

Q: When an individual riding in the car where the defendant had been, Thomas Rowe, actually driving the car, would it have been easily within his reach?

A: Very definitely.

Q: Okay. Could he have pulled it out quickly from—

A: Yes he could have.

Q: —from where it was? Okay. Trooper, had you been able to observe that knife from your ordinary observation as you had approached the vehicle initially?

A: No, you could not.

Q: Okay. In fact when you, I think you testified you saw this green handle sticking up. Did you know, did you discern at that time what that was?

A: No, even with the door open, looking directly at it, no, I could not tell it was a knife until I removed it from underneath the tapes.

From Trooper Spire's testimony, it was reasonable for the jury to infer that the knife was not readily and practically visible to a person approaching the vehicle under ordinary circumstances. It is also clear that even if the handle of the knife was visible, it was not readily recognizable as a part of a weapon. As such, we find that there was sufficient evidence in the record from which a reasonable jury could find that the knife found in the appellant's vehicle was concealed for purposes of § 571.030.1(1).

Point denied.

### Conclusion

The judgment of the circuit court convicting the appellant of unlawful use of a weapon, § 571.030.1(1), is affirmed.

SPINDEN, C.J., and LOWENSTEIN, J., concur.