**STATE of Missouri, Respondent,**

v.

**Damyn Carl STACY, Appellant.**

**No. WD 61945.**

Missouri Court of Appeals,
Western District.

Dec. 16, 2003.

Ellen H. Flottman, Columbia, MO, for appellant.

John M. Morris, Assistant Attorney General, Jefferson City, MO, for respondent.

Before PATRICIA BRECKENRIDGE, P.J., EDWIN H. SMITH and HOWARD, JJ.

PATRICIA BRECKENRIDGE, Judge.

Damyn C. Stacy was convicted, after a bench trial, of the class C felony of possession of a controlled substance, methamphetamine, in violation of section 195.202, RSMo 2000. On appeal, he claims that the trial court erred in denying his motion to suppress statements and other evidence, and in admitting that evidence, because the statements and evidence were obtained as the result of an unlawful seizure. Because this court finds that Mr. Stacy's consensual encounter with the police did not constitute a seizure, the judgment of the trial court is affirmed.

**Factual and Procedural Background**

At approximately 10:30 P.M. on the night of October 25, 2001, Steve L. Hodges, a uniformed police officer with the Maryville Department of Public Safety, was patrolling the 100 block of East Fourth Street in his marked police car. As he was driving slowly down the street, Officer Hodges saw two men walking. The two men were later identified as Mr. Stacy and his uncle, Jeffrey Brown. Mr. Brown noticed Officer Hodges and directed Mr. Stacy's attention to Officer Hodges. Mr. Stacy looked in the direction of Officer Hodges. Mr. Stacy appeared surprised and did a double-take.

Officer Hodges then saw Mr. Stacy raise his hand up to his face, effectively blocking Officer Hodges' view of his face.

Officer Hodges continued to drive slowly and watch Mr. Stacy and Mr. Brown walk. Mr. Stacy repeatedly looked back over his shoulder at Officer Hodges, and he seemed "very nervous" and "fidgety." At one point, Mr. Stacy and Mr. Brown walked through a parking lot, where Officer Hodges lost sight of them. Officer Hodges saw them again when they were walking down an alley toward North Buchanan Street, so Officer Hodges turned onto North Buchanan. As Officer Hodges drove slowly on North Buchanan, he noticed that Mr. Stacy and Mr. Brown were about to cross North Buchanan. Officer Hodges stopped approximately twenty feet before he would have blocked their apparent path.

After Officer Hodges stopped his patrol car, Mr. Stacy and Mr. Brown stopped walking and looked at Officer Hodges. Mr. Stacy and Mr. Brown then approached the patrol car. As the men walked up to the car, Officer Hodges got out of the patrol car, started to walk toward them, and greeted them by saying, "Hey, how is it going?" As he greeted them, Officer Hodges noticed that Mr. Stacy appeared "very, very fidgety." According to Officer Hodges, Mr. Stacy "look[ed] back and forth rather quickly," "[p]ut his hands up to his head rather frequently," and was "shifting his weight back and forth rather frequently."

Officer Hodges then asked for Mr. Stacy's and Mr. Brown's identification. They either gave Officer Hodges their driver's licenses or told Officer Hodges their names, birthday dates, and social security numbers. Officer Hodges used his mobile hand-held radio to contact the Maryville dispatcher to check their driving status and for any outstanding warrants. While

Officer Hodges was checking with the dispatcher, another officer arrived. The dispatcher told Officer Hodges that Mr. Stacy had an active outstanding warrant from Liberty. Officer Hodges relayed this information to Mr. Stacy, placed him under arrest, and transported him to the Department of Public Safety.

Once they arrived at the Department of Public Safety, Officer Hodges began to perform a search incident to Mr. Stacy's arrest. Before Officer Hodges could search Mr. Stacy's coat, Mr. Stacy told Officer Hodges that he had some speed in his coat. "Speed" is the street term for methamphetamine. Officer Hodges checked inside Mr. Stacy's coat pocket and found a small tin containing a white, powdery substance that was later identified as methamphetamine. Officer Hodges then advised Mr. Stacy of his *Miranda*[1] rights.

After being advised of his *Miranda* rights, Mr. Stacy agreed to speak to Officer Hodges, and Officer Hodges asked him how he came into possession of the methamphetamine. Mr. Stacy told Officer Hodges that he had purchased the methamphetamine earlier in the evening for twenty-five dollars from someone in a movie theater parking lot. According to Mr. Stacy, while he had used some of the methamphetamine earlier in the evening, he "hardly got to taste it." Officer Hodges then placed Mr. Stacy under arrest for possession of methamphetamine.

Mr. Stacy was charged with the class C felony of possession of a controlled substance, in violation of section 195.202, RSMo 2000. After he was charged, Mr. Stacy filed a motion to suppress the methamphetamine found in his coat and the statements he made on the basis that they were the product of an unlawful seizure made "without probable cause or reason-

able suspicion that criminal activity was afoot."

The trial court held a hearing on Mr. Stacy's motion to suppress, during which only Officer Hodges testified. The court overruled the motion to suppress after finding that the nature of the contact between Officer Hodges and Mr. Stacy "was consensual, that the act of producing identification for the officer was voluntary and therefore any information that [led] to the arrest and subsequent statements was not obtained in violation of [Mr. Stacy]'s constitutional rights."

Mr. Stacy then waived his right to a jury trial. On the day of the bench trial, Mr. Stacy asked to reopen the motion to suppress to present further evidence. The court permitted him to do so, so Mr. Stacy offered Mr. Brown's testimony and his own testimony as to the events leading up to his arrest for possession of methamphetamine. Following this testimony, the court again stated that it was overruling the motion to suppress.

The court proceeded with the trial. Mr. Stacy was convicted, and the court sentenced him to three years in prison. The court suspended execution of the sentence, however, and placed him on probation for five years. Conditions of his probation were to serve sixty days in the county jail, followed by participation in a substance abuse treatment program. This appeal followed.

### Standard of Review

 Appellate review of the denial of a motion to suppress is limited to a determination of whether there was substantial evidence to support the ruling. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998). In making this determination, this court reviews both the suppression hearing

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

record and the evidence presented at trial. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999). The ruling will be reversed only if this court finds it was clearly erroneous. *State v. Rowe*, 67 S.W.3d 649, 654 (Mo.App.2002).

▮ This court views the evidence and any reasonable inferences from the evidence in the light most favorable to the trial court's ruling. *State v. Neel*, 81 S.W.3d 86, 94 (Mo.App.2002). Questions of law are reviewed de novo. *Rowe*, 67 S.W.3d at 654. This court defers, however, to the trial court's factual findings and credibility determinations. *Id.*

### Initial Encounter Was Not a Seizure

Mr. Stacy's sole point on appeal is that the trial court erred in denying his motion to suppress the methamphetamine found in his coat and his statements because they were the product of an unlawful seizure. Specifically, he argues that Officer Hodges lacked reasonable suspicion to stop and seize him in the first place. Because there was no reasonable suspicion for the stop, Mr. Stacy contends that the methamphetamine seized and his incriminating statements were "fruit of the poisonous tree" and, therefore, should have been excluded.

▮ Mr. Stacy's argument is premised on his assertion that his pre-arrest encounter with the police was a seizure. "Not all personal intercourse between policemen and citizens constitutes a 'seizure' for Fourth Amendment purposes," however. *Neel*, 81 S.W.3d at 95 (citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "A person is not 'seized' until either being subjected to the application of physical force by the police or by voluntarily submitting to the assertion of police authority." *Deck*, 994 S.W.2d at 535 (citing *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). Police do not seize a

person by merely approaching the person on the street and asking questions. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Indeed, "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ... ask to examine the individual's identification, ... and request consent to search his or her luggage, ... as long as the police do not convey a message that compliance with their requests is required." *Id.* at 434–35, 111 S.Ct. 2382.

▮ To decide whether an encounter with the police constitutes a seizure, courts are to "consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439, 111 S.Ct. 2382. "Although not an exclusive list, factors to consider are ' "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." ' " *Rowe*, 67 S.W.3d at 655 (quoting *State v. Scott*, 926 S.W.2d 864, 869 (Mo.App.1996)) (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)).

▮ In this case, Officer Hodges testified that Mr. Stacy and Mr. Brown approached *him*. When they approached him, Officer Hodges got out of the patrol car and greeted them by saying, "Hey, how is it going?" Based upon Mr. Stacy's suspicious conduct earlier and the fact that Mr. Stacy and Mr. Brown had approached him, Officer Hodges then asked for their identification. Mr. Stacy argues that the seizure occurred at that point, because he

did not feel free to leave while Officer Hodges had his identification. The record indicates, however, that Officer Hodges was not sure whether Mr. Stacy actually handed him a driver's license or whether Mr. Hodges simply told him his name, date of birth, and social security number. Even if Mr. Stacy did hand Officer Hodges a driver's license, Officer Hodges testified that he used his mobile hand-held radio to check for any outstanding warrants. Thus, the record indicates that Officer Hodges did not take Mr. Stacy's license and walk away with it but, rather, called in the information as he was examining the license in Mr. Stacy's presence. Police officers may request identification and examine that identification, and those actions, by themselves, are permissible and do not constitute a seizure. *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

Moreover, the circumstances surrounding the encounter were not so intimidating as to indicate to a reasonable person that he was not free to leave without complying with Officer Hodges' request. *Rowe*, 67 S.W.3d at 655–56. Although one other police officer arrived at the scene during the encounter, the record does not indicate that this officer had any contact with Mr. Stacy before or during Officer Hodges' check of Mr. Stacy's identification. Nor does the record indicate that Officer Hodges or the other officer displayed a weapon, touched Mr. Stacy, or physically restrained him. *Id.* at 656. Also, in asking for Mr. Stacy's identification, Officer Hodges did not use language or a tone of voice conveying the message that compliance with his request was required. *Id.* "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Delgado*,

466 U.S. at 216, 104 S.Ct. 1758. Under the totality of the circumstances in this case, no seizure under the Fourth Amendment had occurred up to that point. *Bostick*, 501 U.S. at 434–35, 439, 111 S.Ct. 2382.

After Officer Hodges checked their identification with the dispatcher, he learned that Mr. Stacy had an outstanding warrant for his arrest. At that time, Mr. Stacy was detained and searched. Because of the existence of the warrant, his arrest was constitutionally valid. *Neel*, 81 S.W.3d at 96. The methamphetamine seized from his coat was admissible under the search-incident-to-arrest doctrine. *Id.* Mr. Stacy's statements before he was advised of his *Miranda* rights were spontaneously and voluntarily made without any police questioning and were, therefore, admissible. *See State v. Reese*, 26 S.W.3d 323, 324–25 (Mo.App.2000). Mr. Stacy's other statements were made after he was advised of and waived his *Miranda* rights. Because both the methamphetamine and Mr. Stacy's statements were admissible, the trial court did not clearly err in denying the motion to suppress.

The judgment of the trial court is affirmed.

All concur.