STATE of Missouri, Respondent,

v.

David Wayne GARRIOTT, Appellant.

No. WD 63714.

Missouri Court of Appeals,
Western District.

Dec. 21, 2004.

---

F. Randall Waltz, III, Jefferson City, MO, for Appellant.

Carol A. England, Fulton, MO, for Respondent.

Before LISA WHITE HARDWICK, P.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. David Wayne Garriott was convicted of driving while intoxicated and failing to yield to an emergency vehicle. Mr. Garriott claims that the trial court erred in denying his motion to suppress all the evidence obtained after he was stopped by the police officer because the stop was an unreasonable search and seizure. He also claims that there was insufficient evidence to support the conviction for failure to yield. And he claims that his application for a change of judge should have been granted because the judge was biased and prejudiced against him. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 23, 2002, Missouri State Highway Patrol Trooper Scott Carey was traveling westbound on Route F. As he was making a left-hand turn onto Airway Drive, he observed one pick-up truck rear end another pick-up truck at a stop sign on the corner of Airway Drive and Route F. Mr. Garriott was the driver of the front truck.

Mr. Garriott was stopped at the stop sign when the other truck struck him. Trooper Carey described the impact as hard enough that it jolted Mr. Garriott's truck. Mr. Garriott described the impact as a minor bump that had no jarring effect. Trooper Carey activated his lights and turned around to investigate the accident. As he approached, Mr. Garriott had already turned right and driven westbound down Route F, without stopping to assess any damage or to speak to the driver who rear-ended him. Trooper Carey motioned to the driver of the rear truck to follow him and proceeded after Mr. Garriott's truck. The driver who struck Mr. Garriott did not actually follow Trooper Carey and drove off. At some point while following Mr. Garriott, Trooper Carey turned on his siren. Mr. Garriott then pulled over onto the shoulder before reaching Hawk Lake Road.

Trooper Carey testified that it took longer than a vehicle normally takes for Mr. Garriott to pull over. He also testified that Mr. Garriott probably traveled one-half to three-quarters of a mile between when Trooper Carey first activated his lights at the intersection of Airway Drive and Route F and when Mr. Garriott actually pulled over. Mr. Garriott claimed that after he was rear-ended he waited until he saw that Trooper Carey was driving off before he turned onto Route F. He testified that after he had driven about one-quarter of a mile he saw Trooper Carey's lights in his rearview mirror and immediately pulled over.

Trooper Carey testified that he followed and stopped Mr. Garriott's truck because he became concerned when the vehicle left the scene of the accident, particularly since Mr. Garriott was the victim. Trooper Carey wanted to make sure that Mr. Garriott was not hurt because he had seen other people injured in accidents with that magnitude of impact. Trooper Carey also testified at the motion to suppress hearing that he was concerned that this might be a road rage incident or that a fight could result. And he stated that he wondered why the victim would drive off from the scene of an accident, unless he had an outstanding warrant or was intoxicated.

Once Trooper Carey stopped Mr. Garriott and approached his car to speak with

him, the trooper detected the odor of intoxicants coming from the truck. Trooper Carey asked Mr. Garriott to step out of the car. He noticed that Mr. Garriott's speech was slurred. He asked Mr. Garriott to perform five field sobriety tests. After they were completed, Trooper Carey determined that Mr. Garriott was intoxicated and placed him under arrest. Mr. Garriott refused to take a breathalyzer test, and the Director of Revenue revoked his driver's license [1] under section 577.041.[2]

When Trooper Carey asked Mr. Garriott why he drove off, Mr. Garriott said that his truck was old and he did not care even if there was any damage to it.

Mr. Garriott was charged with driving while intoxicated, in violation of section 577.010 (count 1), and with failing to yield to an emergency vehicle, in violation of section 304.022 (count 2). Four different judges were assigned to Mr. Garriott's case. The first judge recused himself; the State moved to recuse the second judge, who then recused himself because he had heard Mr. Garriott's civil appeal of his driver's license revocation; and Mr. Garriott moved to disqualify the third judge.

Mr. Garriott filed a motion to suppress all evidence obtained after Trooper Carey stopped him, claiming that the stop violated the Fourth Amendment of the United States Constitution because it was an illegal search and seizure and, therefore, all evidence collected after the stop could not be considered. This motion was denied.

A bench trial was scheduled but Mr. Garriott and his counsel arrived late because defense counsel had the wrong time written down. The trial was continued to another date because they were in the jury deliberation room and the recording equipment was not working properly. The judge made the following hand-written docket entry:

> 11–3–03 State by England. △ [defendant] in person & by counsel Randall Waltz. Ct notes cause was set and notice given for trial at 1:00 pm this date. and counsel fail to appear until 1:30 pm. files Motion for Findings of Fact and Conclusions of Law. △ given leave to amend by interlineation. Due to lack of courtroom space in courthouse, cause called in Jury Deliberation room. Recording equipment fails to operate properly. Cause con't & reset 1:00 pm 11–24–03. All costs incurred this date by witnesses for State to be taxed to △.

On November 14, 2003, Mr. Garriott filed an Application for Change of Judge. He alleged that the judge was biased and prejudiced against him and manifested irritation with him by ordering the continuance and costs be assessed against him when the continuance was not due to his late arrival but to the failure of the recording equipment to work properly. This motion was overruled.

At the bench trial, he objected to all evidence obtained after he was pulled over by Trooper Carey. The court watched a video of the pursuit and arrest of Mr. Garriott.[3] The trial court found Mr. Garriott guilty on both counts. He was sentenced to thirty days in jail on count 1 and two days in jail on count 2, both sentences to run concurrently. Both sentences were

---

1. This revocation was reversed by the trial court and then reinstated by our court in *Garriott v. Director of Revenue,* 130 S.W.3d 613 (Mo.App. W.D.2004).

2. Unless otherwise indicated, all statutory references are to RSMo. (2000).

3. This video was made automatically once Trooper Carey turned on his emergency lights.

suspended on the condition of completion of two years of unsupervised probation.

Mr. Garriott appeals both convictions and brings three points on appeal. First, he claims that the trial court erred in overruling his motion to suppress because all of the evidence obtained after he was pulled over was the result of an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution, and should, therefore, be excluded. Second, he claims that the trial court erred in finding that he was guilty of failing to yield to an emergency vehicle because there was insufficient evidence to support finding that he did not immediately stop. Finally, he alleges that the trial court erred in not sustaining his Application for Change of Judge because by ordering him to pay the costs of the continuance that was not his fault, the judge violated the code of judicial conduct.

## II. Legal Analysis

### A. Motion to Suppress

■ In Mr. Garriott's first point relied on, he claims that the trial court erred in overruling his motion to suppress. When a defendant's pretrial motion to suppress evidence is overruled and the defendant objects to admission of the evidence at trial, we will review denial of the motion. *State v. Rowe*, 67 S.W.3d 649, 654 (Mo.App. W.D.2002). This review is limited to a determination of whether the denial is supported by substantial evidence. *Id.* We will reverse the trial court's ruling on a motion to suppress only if that ruling is clearly erroneous, which requires us to have a definite and firm belief that a mistake has been made. *Id.* We view the facts and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Id.* We defer to the trial court's factual findings and credibility determinations, while we review questions of

law de novo. *Id.* Whether or not the Fourth Amendment has been violated is a question of law. *State v. David*, 13 S.W.3d 308, 311 (Mo.App. W.D.2000). But the interpretation of the facts and circumstances related to the seizure is still "a matter of some discretion." *Id.*

■ When a motion to suppress is filed, the state bears the burden of producing evidence and the risk of non-persuasion to show by a preponderance of the evidence that the motion to suppress should be overruled. § 542.296.6; *State v. Abeln*, 136 S.W.3d 803, 807 (Mo.App. W.D.2004).

■ A police officer may make an investigatory stop, without probable cause, when the officer has a reasonable suspicion that the person is engaged in criminal activity. *State v. West*, 58 S.W.3d 563, 568 (Mo.App. W.D.2001). A traffic stop is justified if based on the violation of traffic laws. *State v. Hoyt*, 75 S.W.3d 879, 882–83 (Mo.App. W.D.2002). "A traffic stop may also be justified by observation of conduct which may not itself constitute a traffic violation but merely an unusual operation [of the vehicle]." *State v. Mendoza*, 75 S.W.3d 842, 845 (Mo.App. S.D.2002) (internal citations and quotation marks omitted). The stop must be justified from its inception, and must be based on specific and articulable facts known to the officer. *West*, 58 S.W.3d at 568. This is an objective standard, considering the totality of the circumstances, which do not have to exclude the possibility of innocent behavior. *State v. Thompson*, 826 S.W.2d 17, 19 (Mo.App. W.D.1992).

■ In this case, Trooper Carey observed what he reasonably believed to be an accident. He testified that he saw Mr. Garriott's car move forward from the impact and that such impacts have caused injuries. He was concerned that Mr. Garriott may have been hurt or that this was

a road rage incident, so he followed and stopped Mr. Garriott.[4] Mr. Garriott focuses on the fact that he did not care about any damage to his truck and knew that there was no injury. But Trooper Carey had no way of knowing Mr. Garriott's view of the accident until after he spoke with him. Leaving the scene of such an accident without checking the damage, particularly after seeing a police officer's emergency lights come on, is certainly an unusual operation of the vehicle and justifies the initial stop. *Cf. State v. Heyer*, 962 S.W.2d 401, 407 (Mo.App. E.D. 1998) (defendant's unusual operation of his truck justified the initial stop: the defendant approached the checkpoint area, came halfway up the exit ramp, then pulled back onto the highway); *State v. Malaney*, 871 S.W.2d 634, 637–38 (Mo. App. S.D.1994) (driver's weaving within his lane justified stopping him; a reasonable officer could believe that the driver was drunk, asleep, or otherwise inattentive); *State v. Bunts*, 867 S.W.2d 277, 280 (Mo.App. S.D.1993) (stop is not pretextual when officer intended to warn driver that an abrupt and drastic reduction in speed could be problematic and that he should be more attentive to other drivers).

■ Although Trooper Carey speculated about whether there were legal reasons that Mr. Garriott chose to not stop, his concern about whether Mr. Garriott was hurt or if this was a road rage incident are both valid reasons to investigate why Mr. Garriott did not stop. These other speculations do not change that. *See Hoyt*, 75 S.W.3d at 883 (the officer's intent or motive in stopping a vehicle is irrelevant as long as his actions were lawful). Looking at the totality of the circumstances, Trooper Carey was justified in following Mr. Garriott and stopping him to ascertain why he drove off after being rear-ended. "[A]n officer may have legitimate, non-pretextual reasons other than reasonable suspicion of criminal activity or violation of traffic laws to stop a vehicle that are readily apparent upon a consideration of 'the objective facts and circumstances surrounding the case.'" *Mendoza*, 75 S.W.3d at 846 (internal citations omitted). Such reasons are readily apparent here, and the stop was valid.

■ Once Trooper Carey learned why Mr. Garriott drove away from the accident, then the purpose of his initial stop ended. A seizure may lose its lawful character once a reasonable amount of time has passed to effectuate the initial reason for the stop, "unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure." *State v. Martin*, 79 S.W.3d 912, 916 (Mo.App. E.D.2002). But a new reason to stop Mr. Garriott developed after Trooper Carey began speaking with him, which justified further detention. Trooper Carey became suspicious that Mr. Garriott was intoxicated due to the smell of alcohol and Mr. Garriott's slurred speech. Probable cause to arrest a driver for driving while intoxicated may develop after the driver is properly stopped. *State v. Huckin*, 847 S.W.2d 951, 954 (Mo.App. S.D.1993). Such probable cause existed, and Mr. Garriott's arrest was valid. All the evidence obtained after the stop was, therefore, not excludable and the trial court correctly denied Mr. Garriott's motion to suppress. Point one is denied.

4. Mr. Garriott claims that the only possible reason that Trooper Carey could have had a reasonable suspicion of criminal activity, to justify pulling him over, is because Mr. Garriott left the scene of an accident, possibly violating section 577.060, which he claims does not apply here. But because a traffic stop may also be justified by observation of unusual conduct, *Mendoza*, 75 S.W.3d at 845, we do not need to consider whether Trooper Carey had a reasonable suspicion of criminal activity.

## B. Failure to Yield to an Emergency Vehicle

 In Mr. Garriott's second point relied on, he asserts that there was insufficient evidence to support finding that he was guilty of failing to yield to an emergency vehicle. "Review of a court-tried criminal case is the same as for a jury-tried criminal case." *State v. Daniels*, 18 S.W.3d 66, 67–68 (Mo.App. W.D.2000). When we review a challenge to the sufficiency of the evidence, we are limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *Rowe*, 67 S.W.3d at 657. Therefore, we accept all evidence favorable to the state and all reasonable inferences therefrom, disregarding all evidence to the contrary. *Id.* We defer to the trier of fact. *Id.* When reasonable minds can differ, we will not disturb the verdict. *Rankin v. Venator Group Retail, Inc.*, 93 S.W.3d 814, 819 (Mo.App. E.D.2002).

Mr. Garriott was found guilty of failing to yield to an emergency vehicle. Under this statute:

> Upon the immediate approach of an emergency vehicle giving audible signal by siren or while having at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle or a flashing blue light authorized by section 301.175, RSMo, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as far as possible to the right of, the traveled portion of the highway and thereupon stop and remain in such position until such emergency vehicle has passed, except when otherwise directed by a police or traffic officer.

§ 304.022. Although not entirely clear from the record, this violation is apparently based both on the fact that Mr. Garriott drove off after the accident after Trooper Carey had already turned on his lights and the fact that Mr. Garriott did not pull over right away once Trooper Carey began to pursue him.

The parties are debating whether or not Mr. Garriott "immediately" pulled over once Trooper Carey was clearly pursuing him in an emergency vehicle. Neither party cites any case law to support their arguments and we were unable to find any cases discussing what constitutes "immediately." According to the dictionary, "immediately" means "without interval of time: without delay." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1129 (3d ed.1993).

 There are two different reasons that Mr. Garriott could be accused of not "immediately" pulling over. The first arose when Trooper Carey turned around and turned on his lights and Mr. Garriott made his right turn onto Route F and drove off. Mr. Garriott testified that he saw Trooper Carey continue on down Airway Drive, without stopping, so he went ahead and turned onto Route F. He stated that he went about a quarter mile, looked in his rearview mirror, and saw Trooper Carey's lights. He then pulled over. Trooper Carey testified that he stopped in the middle of his turn after he saw and heard the impact, he turned on his lights, and at that point Mr. Garriott turned onto Route F. This creates a conflict in the evidence. Under our standard of review, we must consider all evidence and inferences in favor of the decision and defer to the trial court's finding that Mr. Garriott was guilty. *Rowe*, 67 S.W.3d at 657. Therefore, we must presume that Mr. Garriott turned after Trooper Carey turned on his lights, which creates an inference that

Mr. Garriott knew that Trooper Carey was becoming involved in the accident and he still chose to drive off.

The parties also argue about how far Mr. Garriott traveled after Trooper Carey turned onto Route F and began pursuing him. Mr. Garriott testified that as soon as he saw that Trooper Carey was after him, which was only about a quarter of a mile up Route F from Airway Drive, he pulled over. He testified that he did not hear Trooper Carey's siren. Trooper Carey testified that he felt that it took longer than a vehicle normally takes for Mr. Garriott to pull over once Trooper Carey began to pursue him. He said that he had his lights on and although he did not initially have his siren on, he had it on when he caught up to Mr. Garriott. Trooper Carey stated that Mr. Garriott pulled over about one-half to three-quarters of a mile from where he first turned on his lights. And when asked on cross-examination if it could be less than a half mile he said, "I don't believe so. It's probably right around a half mile, a little more." Also, when asked if Mr. Garriott was two or three hundred yards down the road before Trooper Carey even started after him, Trooper Carey said that he did not believe that Mr. Garriott was that far ahead and was probably less than two hundred yards.

Mr. Garriott claims that he could not have traveled one-half to three-quarters of a mile up Route F before pulling over because it is not that far between Airway Drive and Hawk Lake Road. He asserts that the distance between Airway Drive and Hawk Lake Road is .451 miles. He is correct that we can take judicial notice of geographical facts, including official maps. *Abeln*, 136 S.W.3d at 808 n. 3. But Mr. Garriott failed to provide any map or other proof of the distance between Airway Drive and Hawk Lake Road to either the trial court or this court. Thus, we cannot take judicial notice of a nonexistent map. The trial court had conflicting evidence about how far Mr. Garriott traveled before he pulled over and apparently found Trooper Carey's claim about the distance traveled to be more credible. Again, we defer to the trier of fact and all evidence favorable to the verdict. *Rowe*, 67 S.W.3d at 657. Further, reasonable minds could differ as to whether Mr. Garriott immediately pulled over after turning down Route F and traveling some distance down that road. As such, we will not disturb the trial court's verdict. *Rankin*, 93 S.W.3d at 819. After reviewing the tape and the testimony, we find that there was sufficient evidence for the trial court to find that Mr. Garriott did not pull over "without delay" and, therefore, failed to yield to Trooper Carey. Point two is denied.

## C. Application for Change of Judge

In Mr. Garriott's final point, he claims that his Application for Change of Judge should have been granted because the trial court manifested a lack of patience and bias and prejudice against him by ordering him to pay the costs of the continuance. He claims that this violates three provisions in the judicial code of conduct contained in Rule 2.03, Canon 3, sections B(4) and (5), and E(1).[5]

To ensure that a defendant receives a fair trial, a trial judge must maintain absolute impartiality during criminal proceedings. *State v. Bass*, 81 S.W.3d 595, 613 (Mo.App. W.D.2002). A judge must recuse herself if her impartiality might reasonably be questioned. *In re C.D.G.*, 108 S.W.3d 669, 678 (Mo.App. W.D.2002). Actual proof of bias or impartiality is not required; it is enough if a reasonable per-

5. Unless otherwise indicated, all rules refer to Missouri Court Rules (2004).

son would have factual grounds to question the impartiality of the judge. *Id.*

Mr. Garriott claims that the trial court's decision to assess costs against him for the continuance when that continuance was required because of faulty equipment and not because he was late demonstrates bias and prejudice against him. But "[b]ias and prejudice must flow from an extra-judicial source to be disqualifying." *Id.* Mr. Garriott presents no evidence of an extra-judicial source of bias. As such, we cannot find bias or prejudice merely because the trial court assessed Mr. Garriott with costs. Furthermore, a judge is entitled to the presumption that she will not preside in a case in which she cannot be impartial. *Id.* We do not know why the trial court assessed costs against Mr. Garriott, but it is entitled to the presumption that it would not have denied the application for a new judge if it could not be impartial. *See State v. Lopez,* 898 S.W.2d 563, 567–68 (Mo.App. W.D.1995) (judge was not required to recuse himself when he displayed displeasure in having to delay trial to get an interpreter for defendant because he did not express any overt opinion about the necessity of the interpreter; his citation of defendant's attorney for criminal contempt and calling her "young woman" also did not display prejudice or bias; nothing in the transcript revealed that the trial court lost his temper in either instance, the court was merely attempting to control the courtroom and promptly proceed with trial). Point three is denied.

### III. CONCLUSION

After considering all of the facts in the case, and the arguments presented by the parties, we affirm the denial of the motion to suppress, the denial of the application for a new judge, and find that there was sufficient evidence to support the convic-

tion for failure to yield. The trial court's judgment is affirmed.

LISA WHITE HARDWICK, P.J., and ROBERT G. ULRICH J. concur.