STATE of Missouri, Appellant,

v.

Micah C. MULLENIX, Respondent.

No. WD 60052.

Missouri Court of Appeals,
Western District.

April 16, 2002.

David A. Baird, Pros. Atty., Nodaway County, Maryville, for appellant.

James R. Hall, Oak Grove, for respondent.

Before HOWARD, P.J.,
BRECKENRIDGE and NEWTON, JJ.

PATRICIA BRECKENRIDGE, Judge.

The State appeals from a judgment granting Micah Mullenix's motion to dismiss a charge against him of driving while

intoxicated, because Mr. Mullenix's right to be free from double jeopardy precluded prosecuting him. The trial court ruled that sanctions taken by the Northwest Missouri State University (NMSU) student-faculty discipline committee, after Mr. Mullenix was arrested for driving while intoxicated on campus, barred the State from prosecuting Mr. Mullenix for driving while intoxicated. On appeal, the State argues that the trial court erred in granting Mr. Mullenix's motion because the administrative disciplinary sanctions taken by NMSU for violation of its campus conduct policy were neither criminal in form nor criminal in application. This court finds that Mr. Mullenix had the burden to prove his affirmative defense that his double jeopardy right to be free of multiple criminal punishments was violated by the criminal prosecution for driving while intoxicated. As a matter of law, he did not meet his burden because the Missouri legislature intended that the administrative disciplinary proceedings impose civil penalties, and there was no evidence that the administrative disciplinary scheme was so punitive that it transformed what was intended as a civil penalty into criminal. The judgment is reversed, and the cause remanded for further proceedings.

### Factual and Procedural Background

In the record on appeal, there is no transcript from the hearing upon Mr. Mullenix's motion to dismiss. The trial court record indicates that only argument of counsel was heard, which was confirmed by the attorney for Mr. Mullenix on appeal. Nevertheless, the trial court considered documentary evidence that was attached to the petition or apparently submitted by Mr. Mullenix to the trial court. The facts within these documents are cit-

ed by both Mr. Mullenix and the State in their appellate briefs, so both parties apparently concede that these documents were properly before the trial court and properly considered as evidence.

The documentary evidence establishes that, in the fall of 2000, Micah Mullenix was a student at NMSU. On November 19, 2000, Mr. Mullenix was driving a vehicle through campus when he drove off the road into the grass and over a manhole in front of one of the campus buildings. While Mr. Mullenix was able to drive back onto the road, the vehicle was disabled from striking the manhole cover. A NMSU police officer came upon the vehicle parked in the west bound lane of West Seventh Street, and observed Mr. Mullenix standing outside the car. When the officer asked Mr. Mullenix why he was stopped in the road, Mr. Mullenix responded that his car had stopped running.

The officer detected an odor of intoxicants about Mr. Mullenix and, in response to the officer's inquiry, Mr. Mullenix admitted that he had been drinking. The officer administered field sobriety tests, which Mr. Mullenix failed. The officer then placed Mr. Mullenix under arrest for driving while intoxicated in violation of § 577.010, RSMo.2000.[1] The officer took Mr. Mullenix to the campus safety office, where the officer read Mr. Mullenix his *Miranda*[2] rights. Another officer administered a BAC verifier, and the result was that Mr. Mullenix's blood alcohol content was 0.168 percent.

Mr. Mullenix was given a traffic citation, labeled "Uniform Complaint and Summons," which charged him with the crime of driving while intoxicated in violation of § 577.010. He also was given a "Department of Campus Summons for Appearance

---

1. All statutory references are to Revised Statutes of Missouri 2000.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

in the Office of Student Affairs." The uniform complaint was forwarded to the prosecuting attorney for Nodaway County. On November 28, 2000, the State filed an information, charging Mr. Mullenix with the class B misdemeanor of driving while intoxicated.

On January 11, 2001, Mr. Mullenix appeared before the NMSU student-faculty discipline committee, which considered the charge of "(1) Violation of University policies, city ordinances or state and federal laws other than those listed in [the university] handbook—Driving While Intoxicated, a class 'C' violation." Mr. Mullenix "pled in violation to the charge," and the committee voted to accept his plea. The committee placed Mr. Mullenix on strict campus conduct probation for the remainder of the calendar year and ordered him to attend one session of the "alcohol after hours" program, perform five hours of assigned service, and pay a $150 fine.

Thereafter, Mr. Mullenix filed a motion to dismiss the criminal charges brought against him in Nodaway County. In his motion, Mr. Mullenix alleged that the prosecution of these charges violated his Fifth Amendment protection against double jeopardy. After hearing argument on Mr. Mullenix's motion, the court granted Mr. Mullenix's motion. The State appeals.

### Standard of Review

■ This court examines questions of law de novo and defers "to the trial court's factual findings and credibility determinations." *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000). The determination of whether the protections against double jeopardy apply is a question of law which this court reviews de novo. *See State v. White*, 931 S.W.2d 825, 828 (Mo.App.1996)

(reviewing the denial of the defendant's double jeopardy claim de novo).

### Proof of Double Jeopardy Fails

■ In its point on appeal, the State claims that the circuit court erred in sustaining Mr. Mullenix's motion to dismiss, in that double jeopardy does not apply because "administrative disciplinary sanctions by an educational institution for violation of its campus conduct policy are neither criminal in form, nor criminal in application." Therefore, the State argues that the sanctions taken by NMSU should not preclude the criminal prosecution of Mr. Mullenix for driving while intoxicated.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This protection is made applicable to the states through the Fourteenth Amendment. *Milner v. State*, 975 S.W.2d 240, 242 n. 3 (Mo.App.1998) (citations omitted). While Missouri's double jeopardy protection is derived from common law,[3] *State v. Frances*, 51 S.W.3d 18, 21 (Mo.App.2001), "there is no readily discernible difference between the Fifth Amendment guarantee against double jeopardy, enforceable against the states through the Fourteenth Amendment, and the common law guarantee as applied in this State." *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977). Because double jeopardy is an affirmative defense, it is the defendant's burden to prove that double jeopardy applies. *White*, 931 S.W.2d at 828.

■ "Three distinct abuses are prevented by the Double Jeopardy Clause: (1) a

---

**3.** Art. I, Section 19, of the Missouri Constitution contains a form of protection against double jeopardy. That protection, however, only applies to re-prosecution after an acquittal by a jury.

subsequent prosecution for the same offense after acquittal; (2) a subsequent prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Mayo*, 915 S.W.2d 758, 759 (Mo. banc 1996) (citations omitted). The third of these abuses is at issue in this case. With regard to multiple punishments, the Double Jeopardy Clause does not prohibit all additional sanctions that could be considered punishment. *Hudson v. U.S.*, 522 U.S. 93, 98–99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997). "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, and then only when such occurs in successive proceedings." *Id.* at 99, 118 S.Ct. at 493 (citations omitted).

The United States Supreme Court has addressed whether impermissible multiple punishments occur when an individual is criminally prosecuted after an administrative body imposed sanctions upon the individual. *See id.* at 96, 118 S.Ct. at 491. In *Hudson,* the Court held that the initial inquiry in determining whether a punishment is criminal or civil is a matter of statutory construction. *Id.* at 99, 118 S.Ct. at 493. In its analysis, the Court stated that there is a two-part analysis to determine whether an administrative sanction is criminal or civil. *Id.* at 99, 101, 118 S.Ct. at 493, 494. The first prong is to determine whether the intent of the authorizing statute is to impose criminal or civil penalties. *Id.* at 99, 118 S.Ct. at 493. In determining whether Congress intended the sanction to be criminal or civil, the Court stated that, if the authority to impose the sanction is given to an administrative agency, there is prima facie evidence that Congress intended to provide for a civil sanction. *Id.* at 103, 118 S.Ct. at 495.

If the legislature intended the penalty to be civil, the second prong is to determine " 'whether the statutory scheme [is] so punitive either in purpose or effect,' . . . as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Id.* at 99, 118 S.Ct. at 493 (quoting *U.S. v. Ward*, 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980), also quoting *Rex Trailer Co. v. U.S.*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956)). In applying the second prong, the court stated that the seven factors enumerated in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), are useful guideposts. *Hudson*, 522 U.S. at 99–100, 118 S.Ct. at 493. Those factors are: "(1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as punishment'; (3) 'whether it comes into play only on a finding of *scienter* '; (4) 'whether its operation will promote the traditional aims of punishment-retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.' " *Id.* (quoting *Kennedy*, 372 U.S. 144, 168–69, 83 S.Ct. at 567–68). "It is important to note, however, that 'these factors must be considered in relation to the statute on its face,' and 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100, 118 S.Ct. at 493 (quoting *Kennedy*, 372 U.S. at 169, 83 S.Ct. at 568, and *Ward*, 448 U.S. at 249, 100 S.Ct. at 2641–42).

The defendants in *Hudson* were former bank executives who were involved in using their positions to arrange loans that violated federal banking law. 522 U.S. at 96–97, 118 S.Ct. at 491–92. Three years before the government brought criminal charges against the defendants, the Office

of Comptroller of Currency excluded the defendants from employment in the banking industry and imposed monetary penalties between $12,500 and $16,500 each. *Id.* at 97, 118 S.Ct. at 492. The Court held that the fact that Congress conferred the authority to impose sanctions upon an administrative agency was prima facie evidence that Congress intended the administrative sanctions to be civil, and there was not "the clearest proof" that the sanctions were " 'so punitive in form and effect as to render them criminal despite Congress' intent to the contrary.' " *Id.* at 103–04, 118 S.Ct. at 495 (quoting *United States v. Ursery*, 518 U.S. 267, 290, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996)). Therefore, the Double Jeopardy Clause did not bar the criminal prosecution because the prior administrative sanctions were civil not criminal. *Id.* at 104, 118 S.Ct. at 495.

In reaching this conclusion, the Supreme Court criticized its previous decision in *U.S. v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), finding that "*Halper's* deviation from longstanding double jeopardy principles was ill considered." *Hudson*, 522 U.S. at 101, 118 S.Ct. at 494. The Supreme Court, in *Hudson*, disavowed the portion of the *Halper* opinion that "focused on the proportionality of the sanction to the harm caused, and '[i]n so doing, ... elevated a single *Kennedy* factor—whether the sanction appeared excessive in relation to its nonpunitive purposes—to dispositive status.' " *U.S. v. Mayes*, 158 F.3d 1215, 1221 (11th Cir.1998) (quoting *Hudson*, 522 U.S. at 101, 118 S.Ct. at 494). The *Hudson* decision also noted that the *Halper* opinion was flawed in that it focused on the actual sanction imposed and did not evaluate "the 'statute on its face' to determine whether it provided for what amounted to a criminal sanction." *Hudson*, 522 U.S. at 101, 118 S.Ct. at 494

(quoting *Kennedy*, 372 U.S. at 169, 83 S.Ct. at 568).

Applying the analysis of *Hudson* to the facts of Mr. Mullenix's case, the issue is whether Mr. Mullenix would be subjected to multiple criminal punishments for the same conduct, if the State was allowed to prosecute him. Because NMSU is a public university that is funded by the State, actions taken by NMSU are state actions. *NCAA v. Tarkanian*, 488 U.S. 179, 192, 109 S.Ct. 454, 462, 102 L.Ed.2d 469 (1988) ("A state university without question is a state actor."). Therefore, if a punishment imposed by NMSU is criminal, double jeopardy may preclude a subsequent criminal prosecution.

The first prong in the *Hudson* analysis requires this court to look at the statutory scheme that authorizes NMSU to impose disciplinary sanctions upon its students. Section 174.120 grants to the board of regents of state teachers colleges, like NMSU, the power to discipline students.[4] Section 174.120 states,

> Each state teachers college shall be under the general control and management of its board of regents, and the board shall possess full power and authority to adopt all needful rules and regulations for the guidance and supervision of the conduct of all students while enrolled as such; to enforce obedience to the rules; to invest the faculty with the power to suspend, or expel any student for disobedience to the rules, or for any contumacy, insubordination, dishonesty, drunkenness or immoral conduct....

While this statute contains no language that explicitly denominates any sanctions imposed to enforce obedience to the rules as civil, it is significant that the authority to issue disciplinary sanctions is conferred upon administrative agencies, the board of

---

**4.** NMSU is a state college that is governed by § 174.120. *See* § 174.020.

regents of the state teachers colleges. *Hudson,* 522 U.S. at 103, 118 S.Ct. at 495. "That such authority was conferred upon administrative agencies is prima facie evidence that [the Missouri legislature] intended to provide for a civil sanction." *Id.* Mr. Mullenix did not rebut this prima facie evidence, so under the first prong of the *Hudson* analysis, the disciplinary sanctions were intended by the legislature to be civil.

The second part of the *Hudson* analysis requires that this court look to the statutory scheme to determine whether it is " 'so punitive either in purpose or effect,' ... as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Id.* at 99, 118 S.Ct. at 493 (quoting *Ward,* 448 U.S. at 248–49, 100 S.Ct. 2636, also quoting *Rex Trailer Co.,* 350 U.S. at 154, 76 S.Ct. at 222). The "statutory" scheme, here, is actually the rules and regulations adopted by the board of regents of NMSU under the authority of § 174.120. *Mayes,* 158 F.3d at 1222–23. Since Mr. Mullenix was subjected to NMSU disciplinary proceedings, it is reasonable to assume that the board of regents exercised its authority and adopted rules or regulations establishing same. Nevertheless, no NMSU rules and regulations governing student discipline are in the record on appeal, nor does it appear that they were introduced into evidence before the trial court. Since the rules and regulations are not in the record, the only mechanism by which they could be considered is if it is proper to take judicial notice of any NMSU rules and regulations relating to student discipline.

"The term *judicial notice* is broadly used to denote 'both judicial knowledge (which courts possess) and common knowledge (which every informed individual possesses); and matters of common knowledge may be declared applicable to the case without proof.' " *Carr v. Grimes,* 852 S.W.2d 345, 351 (Mo.App. 1993) (quoting *Bone v. General Motors Corp.,* 322 S.W.2d 916, 924 (Mo.1959)). The doctrine of judicial notice is left to the court's discretion " 'depending primarily upon the nature of the subject, the issues involved, and the apparent justice of the case.' " *Id.* (quoting *Buhrkuhl v. F.T. O'Dell Constr. Co.,* 232 Mo.App. 967, 95 S.W.2d 843, 846 (1936)). Under § 536.031.5, Missouri courts take judicial notice, without proof, of the Code of State Regulations. *McClellan v. Dir. of Revenue,* 996 S.W.2d 794, 796 (Mo.App.1999). Unless the rule or regulation has been published in the Code of State Regulations, however, a court may not take judicial notice of an administrative rule or regulation. *Ballew v. Ainsworth,* 670 S.W.2d 94, 101 (Mo.App.1984).[5] The NMSU board of regents has not published rules and regulations regarding student discipline in the Code of State Regulations. So, neither the trial court, nor this court, could take judicial notice of NMSU rules and regulations regarding school discipline.

Since the second prong of the *Hudson* analysis requires consideration of the statutory, or regulatory, scheme, it is impossible to undertake the analysis without the regulations. Because the burden of proof was on Mr. Mullenix, it was his burden to prove that the regulatory scheme was so punitive in form and effect to render the sanctions criminal despite the legislature's intent to the contrary. He did not do so. Consequently, the trial court misapplied the law when it found that the disciplinary sanctions imposed by NMSU on Mr. Mul-

5. Missouri courts may also take judicial notice of rules and regulations promulgated pursuant to federal statutes. *Giddens v. Kansas City S. Ry. Co.,* 29 S.W.3d 813, 821 (Mo. banc 2000), *cert. denied,* 532 U.S. 990, 121 S.Ct. 1644, 149 L.Ed.2d 502 (2001).

**38**

lenix were criminal, so as to preclude this subsequent criminal prosecution.

The judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.