

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
)
**Appellant,** )
) **WD76623**
v. )
) **OPINION FILED:**
) **September 9, 2014**
NICHOLAS CARR, )
)
**Respondent.** )

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kathleen A. Forsyth, Judge**

**Before Division I:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

The State of Missouri appeals the suppression ruling of the Circuit Court of Jackson

County, Missouri ("trial court"), granting Nicholas R. Carr's ("Carr") motion to suppress

evidence and statements. In this interlocutory appeal,[1] the question presented is whether a police

officer's act of approaching an individual to speak with the individual constitutes a *Terry*[2] stop

implicating the Fourth Amendment. We conclude that under the undisputed factual

---

[1] The interlocutory appeal challenging the trial court's suppression ruling by the State is authorized by section 547.200.1(3), RSMo 2000.

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

circumstances of this case, it does not. Accordingly, we reverse the trial court's suppression ruling and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

On August 31, 2012, Officer Brian Karman ("the Officer") was patrolling a neighborhood in east Kansas City. It was raining, and there was not much pedestrian traffic on the residential street. The Officer noticed a young man in a red shirt walking down the street. This individual was subsequently identified as Carr. Shortly thereafter, pursuant to an anonymous tip, the Officer determined he should speak with Carr. The Officer turned his patrol car around and spotted Carr on foot on the sidewalk. The Officer exited his patrol car and, when he was approximately ten to fifteen yards from Carr, the Officer stated to Carr, "I need to talk to you." At this point, Carr dropped or threw down the hat he had been holding in his hands and turned away from the Officer while reaching his hands toward his hip area or waistband. Believing that Carr was trying to draw a weapon, the Officer drew his own service weapon, closed the distance between himself and Carr, and yelled at him repeatedly to "Show me your hand." Carr began to back-pedal and tried to run; but the Officer grabbed him, forced him to the ground, secured his hands with flex cuffs, and discovered a .380 semiautomatic handgun under Carr's shirt. Carr was arrested and was later charged with one count of the class D felony of unlawful use of a weapon.

Carr filed a motion to suppress all evidence relating to the Officer's encounter with Carr, and the trial court held a hearing on the motion. The Officer was the only one to testify at the suppression hearing. The trial court ruled on the motion from the bench, stating, "I think [the case of *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)][3] addresses—in

---

[3] In *Florida v. J.L.*, based exclusively on an anonymous tip, law enforcement officers seized and frisked J.L., obtaining a gun from his pocket that led to multiple criminal charges. 529 U.S. 266, 268, 120 S.Ct. 1375, 146

2

fact it says in the first paragraph that an anonymous tip lacks sufficient indicia of reliability to establish a *Terry* investigatory stop and I think that is the issue here." The trial court went on, "I don't have a problem with the Officer's search once Mr. Carr was stopped; however, I do have a problem with the stop itself, so I'm going to sustain the motion to suppress." The State filed the present interlocutory appeal.

## Standard of Review

At a hearing on a motion to suppress, the State has the burden of justifying a warrantless search and seizure. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999). We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous. *State v. Rowe*, 67 S.W.3d 649, 654 (Mo. App. W.D. 2002). "In reviewing a trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are to be viewed in a light most favorable to the ruling of the trial court." *Id.* (internal quotation omitted). "While we must defer to the trial court's factual findings and credibility determinations in ruling on the motion to suppress, we review questions of law *de novo*." *Id.* The issue of whether or not the Fourth Amendment has been violated is an issue of law that we review *de novo*. *State v. Robertson*, 328 S.W.3d 745, 750 (Mo. App. W.D. 2010).

## Analysis

The Fourth Amendment to the United States Constitution guarantees citizens freedom from unreasonable searches and seizures. *United States v. Mendenhall*, 446 U.S. 544, 550, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Missouri's state Constitution provides a co-extensive

L.Ed.2d 254 (2000). The Supreme Court stated, "The question presented in this case is whether an anonymous tip that a person is carrying a gun is, without more, sufficient to justify a police officer's stop and frisk of that person. We hold that it is not." *Id.* As we explain in our ruling today, the present case differs from *J.L.* in that law enforcement did not act upon an anonymous tip to immediately "stop and frisk" Carr. Instead, the Officer approached Carr and asked to speak with him. It was only after Carr made furtive gestures near his hip and waist area in response to the Officer's request that the Officer seized, stopped, and frisked Carr. This distinction, as we explain, is one with a difference.

3

protection in article I, section 15. *Rowe*, 67 S.W.3d at 654. Generally the search or seizure of a person requires a warrant based upon probable cause. *Deck*, 994 S.W.2d at 534. But there are situations when limited searches or seizures are justified absent a valid warrant. For example, the Fourth Amendment is not offended when a brief stop followed by a pat-down or frisk for weapons occurs and is based upon reasonable suspicion supported by articulable facts that the person stopped is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The trial court in this case granted the motion to suppress because the trial court assumed that the Officer's communication to Carr that "I need to talk to you" constituted a *Terry* stop. From there, the trial court concluded that the seizure was not based upon reasonable suspicion that Carr was engaged in criminal activity and was, accordingly, a violation of the Fourth Amendment. The trial court reasoned that the anonymous tip linking Carr to criminal activity did not constitute reasonable suspicion that Carr was engaged in criminal activity.

The trial court was correct that "[a]n anonymous tip by itself seldom, if ever, provides reasonable suspicion that a person committed a crime warranting a *Terry*-stop." *State v. Long*, 417 S.W.3d 849, 853 (Mo. App. S.D. 2014) (internal quotation omitted); *see also J.L.*, 529 U.S. at 268.[4] Here, though, the State contends—and we agree—that the Officer's request to speak with Carr was not a *Terry* stop, and thus, we need not reach the issue of whether the anonymous tip alone would have provided the Officer with reasonable suspicion to effectuate an investigatory stop.[5]

---

[4] More recently, the U.S. Supreme Court has stated that, "under appropriate circumstances, an anonymous tip can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." *Navarette v. California*, 134 S.Ct. 1683, 1688, 188 L.Ed.2d 680 (2014) (internal quotation omitted).

[5] The trial court was concerned that the reason that the Officer approached Carr was that the Officer believed Carr to be one of the individuals mentioned in the anonymous tip. But the Officer's subjective reason for approaching Carr does not render the encounter a *Terry* stop. "Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at

4

"[T]he correctness of the legal characterization of the facts appearing in the record is a matter for [the appellate] [c]ourt to determine." *Mendenhall*, 446 U.S. at 552 n.5. Clearly, "not every encounter between a police officer and a citizen is an intrusion requiring an objective justification." *Id.* at 553 (citing *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry*, 392 U.S. at 34 (White, J., concurring). "Since *Terry*, we have held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). *See also Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (holding an officer approaching someone in an airport, displaying a badge, and asking the person to answer a few questions does not constitute a seizure). Indeed, police often need to question citizens in order to keep peace and enforce the law. "Without such investigation, those who were innocent might be falsely accused, those who are guilty might wholly escape prosecution, and many crimes would go unsolved." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

"Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way." *Terry*, 392 U.S. at 34 (White, J., concurring). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 19 n.16. There is no litmus test for whether an encounter between an officer and a citizen constitutes a stop, but reviewing courts must consider "all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the

the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (citation omitted) (internal quotation omitted).

person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439. "The rule looks, not to the subjective perceptions of the person questioned, but rather, to the objective characteristics of the encounter that may suggest whether a reasonable person would have felt free to leave." *California v. Hodari D.*, 499 U.S. 621, 640, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (Stevens, J., dissenting). There are several different factors that courts have considered in determining whether an encounter constitutes a stop: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" are examples. *Mendenhall*, 446 U.S. at 554.

Here, there was only a single police officer. The Officer did not display his weapon, and he did not touch Carr. In fact, the Officer was thirty to forty-five feet away from Carr when he called out to him. He did not say, "Hold it right there," or "Freeze," but only stated, "I need to talk to you." There was no evidence that the Officer turned on the lights or sirens to his patrol car as he approached Carr. There was no evidence that the Officer was running towards Carr; instead, the evidence was that the Officer was walking. There was no evidence indicating that the Officer's tone of voice demanded compliance. In addition, when asked at the hearing whether Carr would have been free to leave at that point, the Officer answered, "I had not—it was just a contact, so yes, I guess he would be." Although the subjective intent of the Officer "is irrelevant except insofar as that may have been conveyed to the respondent," many cases have mentioned the officer's subjective assessment of the situation. *Id.* at 554 n.6. *See, e.g., Florida v. Royer*, 460 U.S. 491, 496, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (noting state's concession that "the officers would not have permitted Royer to leave the room even if [Royer] had

6

erroneously thought that he could"); *State v. Johnson*, 427 S.W.3d 867, 872 (Mo. App. E.D. 2014) (concluding, "as confirmed by [officer's] testimony, Johnson was free to disregard the officers and go about his business"); *State v. Flowers*, 420 S.W.3d 579, 583 (Mo. App. S.D. 2013) (noting officer's testimony that when he asked the defendant to accompany him, the defendant was not free to leave).

Finally, we note that the Missouri Supreme Court's decision in *Deck* is instructive in this case. In *Deck*, the officer, acting pursuant to an anonymous tip, was looking for Deck to question him. *Deck*, 994 S.W.2d at 535. When he saw Deck driving in the parking lot to his apartment complex, the officer approached Deck's car. *Id.* The officer identified himself as an officer and asked Deck, "[H]ow you doing?" *Id.* The court noted that at this time, Deck did not submit to the officer's authority but that his "reaction to the initial encounter with Officer Wood was to turn away and reach down toward the passenger side of the vehicle as if he was reaching for something or attempting to conceal something." *Id.* The court stated:

> Deck's [suppression] argument fails because no stop or seizure took place when Officer Wood first approached the car. A person is not "seized" until either being subjected to the application of physical force by the police or by voluntarily submitting to the assertion of police authority. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Here, Officer Wood did not stop Deck's car, nor did he display his weapon as he approached the vehicle, and instead he merely identified himself and said something like "how you doing?" Under these circumstances, Deck was not subject to the physical control of Officer Wood nor did he submit to Officer Wood's authority when the officer approached the vehicle.

*Id.* The *Deck* court concluded, "Only when Officer Wood ordered Deck to sit up and display his hands, and Deck then complied, thereby submitting to the assertion of police authority, did the seizure occur." *Id.* at 535-36. Similarly, here, as the Officer walked toward Carr, he did not display emergency lights, sirens, or his weapon; instead, he merely stated to Carr that he wanted to speak with him, and like the factual scenario in *Deck*, Carr did not comply with the Officer's

7

request. The Officer's actions up to this point in time do not constitute a seizure; instead, only when the Officer displayed his weapon and demanded that Carr show him his hands was Carr seized for Fourth Amendment purposes. By this time, the Officer had a reasonable suspicion that Carr was armed and engaged in criminal activity (i.e., Carr made a physical gesture leading the Officer to believe Carr was reaching for a weapon at his waist and hip area). As it turns out, the Officer was correct; Carr lifted his shirt, exposing his firearm.

The trial court incorrectly assumed that the Officer's initial contact with Carr constituted a *Terry* stop, requiring reasonable suspicion of criminal activity for the Officer's request to Carr to speak with him; therefore, the trial court erroneously granted Carr's motion to suppress. The State's point on appeal is granted.

### Conclusion

Because the trial court erroneously granted Carr's motion to suppress evidence, we reverse the trial court's suppression ruling and remand for further proceedings consistent with this opinion.

_____
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Karen King Mitchell, Judges, concur.