

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | WD78039 |
| | ) | |
| v. | ) | OPINION FILED: April 21, 2015 |
| | ) | |
| LUCAS D. JEWELL, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Nodaway County, Missouri**
The Honorable Glen A. Dietrich, Judge

Before Division Three: Gary D. Witt, Presiding Judge, James E. Welsh, Judge and
Zel M. Fischer, Special Judge

The State brings this interlocutory appeal challenging the trial court's grant of

Lucas Jewell's ("Jewell") motion to suppress evidence of intoxicated driving. The State

asserts error in the trial court's determination that the campus police officer had no legal

justification for stopping Jewell. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts in this case are not in dispute for purposes of this appeal. On

September 15, 2013, University police officer Travis Cochenour ("Officer Cochenour")

initiated a traffic stop at 3:29 a.m. after the officer observed a vehicle fail to stop at two

different posted stop signs on campus.  The vehicle turned into a parking lot, and its driver, Jewell, exited the vehicle and attempted to walk away.  Jewell failed several field sobriety tests and was arrested for driving while intoxicated.  He was then transported to the Nodaway County jail.  The officer's probable cause for believing Jewell was intoxicated once he came into contact with the officer is not in dispute for purposes of this appeal; rather, the dispute is over the basis for the original stop.  Jewell submitted to a blood-alcohol test which registered at .187.  Jewell was charged in state court with running the stop signs and driving while intoxicated.

Jewell filed a motion to suppress evidence and to dismiss in which he alleged that the original stop was made without "any probable cause or other legal justification" and that "even if the Defendant failed to adhere to the campus stop sign, such was not a violation of law so as to authorize the officer to stop and arrest the Defendant."  The trial court agreed.  It then granted the motion to suppress and dismissed the case.  This appeal follows.

## Analysis

The State brings two points on appeal.  First, it argues that the trial court erred in granting Jewell's motion to suppress because it erroneously held that Jewell's actions on the campus "did not constitute a criminal offense, or a violation of a county or municipal ordinance" such that "there was no legal justification for the officer to stop the suspect, or if stopped, to develop further grounds for an arrest."  Second, the State argues that despite

2

the court's erroneous interpretation of section 174.709.1,[1] the campus police officer conducted a permissible administrative stop pursuant to sections 174.120 and 174.700.

At the outset, we emphasize two arguments that the State does <u>not</u> make on appeal. First, the State does not argue that the stop could be justified even if Jewell's running of the stop signs was not itself unlawful, and even if the Board had not authorized the placement of the stop signs.[2] Instead, the State's argument on appeal proceeds on the basis that the stop was only permissible if Jewell's conduct was illegal, or violated duly enacted University regulations. Second, the State does not rely on the recent decision of the United States Supreme Court holding that the Fourth Amendment is not violated where an officer performs a traffic stop based on an objectively reasonable, but incorrect, belief that the defendant has violated the law. *Heien v. North Carolina*, 135 S. Ct. 530, 540 (2014). Because the State has not made these arguments, we do not address them, and our opinion should not be read to foreclose such arguments in a future case.

### Standard of Review

"While we must defer to the trial court's factual findings and credibility determinations in ruling on the motion to suppress, we review questions of law *de novo.*" *State v. Carr*, 441 S.W.3d 166, 168 (Mo. App. W.D. 2014) (citations omitted). The issue

---

[1] All statutory references are to RSMo 2000 cumulative as supplemented unless otherwise indicated.

[2] *See*, *e.g.*, *United States v. Sokolow,* 490 U.S. 1, 10 (1989) (Innocent behavior may be the basis for probable cause. The degree of suspicion that attaches to particular types of noncriminal acts is a relevant inquiry.) (quoting *Illinois v. Gates*, 462 U.S.213, 243-44 n.13 (1983)); *Reid v. Georgia*, 448 U.S. 438, 441 (1980) (recognizing that there may be circumstances in which lawful conduct might justify a suspicion of criminal activity).

3

of whether or not the Fourth Amendment has been violated is an issue of law that we review *de novo.*  *Id.*

## Point I

In Point I, the State contends that the trial court erred when it held that Jewell's actions on the campus "did not constitute a criminal offense, or a violation of a county or municipal ordinance" such that "there was no legal justification for the officer to stop the suspect, or if stopped, to develop further grounds for an arrest."  The trial court reasoned that although a new statute equated a violation of a campus traffic regulation with that of a municipal ordinance, this was effective only upon the adoption of the regulations by the Board.  The trial court pointed out that "although the Board had authority under Section 174.709 RSMo., as of 8-28-13, to establish regulations to control traffic on its campus and to make violations of those regulations have the same effect as a municipal ordinance violations[sic], it did not do so until 2-7-14."  The court went on to conclude that "[a]ccordingly, the traffic stop of the Defendant on campus on 9-15-13 for failure to stop at a stop sign, was nothing more than a stop for a purported violation of a campus regulation" and "such violations are civil in nature."

The only basis established for the officer's stop of Jewell was the failure to stop at a stop sign on a campus street.  The trial court found that there was insufficient evidence to establish that Jewell violated any law such as to justify the officer's original stop of his vehicle.  The State has the burden of "establishing that [Jewell's] motion to suppress should be overruled once [Jewell] makes a sufficient assertion of standing to raise a violation of Fourth Amendment rights."  *State v. McDonald*, 170 S.W.3d 535, 539 (Mo.

4

App. W.D. 2005). Here, the trial court found that based on the belated adoption of the University's regulations, the traffic ordinances did not have the same force and effect as violating a municipal ordinance. The court also relied on our holding in *McDonald* for the conclusion that no authority for the placement of the stop sign had been proven. *Id.* at 539.

In Missouri, a university's Board of Regents ("Board") is a creature of statute and its authority is limited to that granted to it by the legislature. *See, State ex rel. Mo. Pub. Defender Comm'n v. Waters*, 370 S.W.3d 592, 598 (Mo. banc 2012). It may only adopt rules and regulations within the authority granted to it by its enabling statutes. *Id.* at 598-99. Here, sections 174.120 and 174.150.1 authorized the University's Board of Regents to develop rules and regulations governing the conduct of its students and faculty[3] and to administratively discipline them for a violation thereof. *State v. Mullenix,* 73 S.W.3d 32, 36 (Mo. App. W.D. 2002). The violation of the rules and regulations promulgated pursuant thereto subjects the offender to a civil sanction. *Id.* at 37. Pursuant to this authority, the Board established traffic regulations sometime in the 1980's.

In 1993, section 174.703 was enacted authorizing the University to employ police officers to serve on the campus.

**Section 174.703 (RSMo 1993):**

> The college or university police officers, before they enter upon their duties, shall take and subscribe an oath of office before some officer authorized to administer oaths, to faithfully and impartially discharge the duties thereof, which oath shall be filed in the office of the board, and the

---

[3] Pursuant to the terms of the statute, these rules and regulations only affected the conduct of students and faculty, not that of the general public.

secretary of the board shall give each college police officer so appointed and qualified a certificate of appointment, under the seal of the board, which certificate shall empower him or her with the same authority to maintain order, preserve peace and make arrests as is now held by peace officers. The college or university police officer may in addition expel from the public buildings, campuses, and grounds, persons violating the rules and regulations that may be prescribed by the board or others under the authority of the board. Such officer or employee of the state college or university as may be designated by the board shall have immediate charge, control and supervision of police officers appointed by authority of this section. Such college or university police officers shall have satisfactorily completed before appointment a training course for police officers as prescribed by chapter 590 for state peace officers or, by virtue of previous experience or training, have met the requirements of chapter 590.

This section, as it existed from 1993 until August 28, 2013, authorized the Board to promulgate regulations of its own to control campus traffic, but did not in and of itself regulate campus traffic. *State v. McDonald,* 170 S.W.3d 535, 539 (Mo. App. W.D. 2005). In *McDonald*, a university police officer observed an automobile exceed the speed limit as posted on a sign on a campus street. The officer was unable to testify as to who set the campus speed limit or who posted the campus speed limit sign and upon what authority the sign was placed. *Id.* at 537. The State failed to put into evidence the regulations of the university that established the speed at that particular location, if they did in fact exist; therefore, there was no evidence to establish that the defendant in that matter violated an "official traffic control device." We held that it was improper to assume that a street sign erected on a university campus was "placed in accordance with the provisions of the law" unless some evidence were presented that it was placed there pursuant to the law. *Id.* at 539. We then upheld the motion court's ruling granting the motion to suppress. *Id*. at 540.

The State argues that the amendments to section 174.703, along with sections 174.709 and 174.712, which were newly enacted and effective as of August 28, 2013 (eighteen days before the arrest in this matter), make the holding in *McDonald* inapposite.

**Section 174.703:**

> 1. The college or university police officers, before they enter upon their duties, shall take and subscribe an oath of office before some officer authorized to administer oaths, to faithfully and impartially discharge the duties thereof, which oath shall be filed in the office of the board, and the secretary of the board shall give each college police officer so appointed and qualified a certificate of appointment, under the seal of the board, which certificate shall empower him or her with the same authority to maintain order, preserve peace and make arrests as is now held by peace officers.
>
> 2. The college or ***university police officers shall have the authority to enforce the regulations established in section 174.709 and general motor vehicle laws in accordance with section 174.712 on the campus as prescribed in chapter 304***. The college or university police officer may in addition expel from the public buildings, campuses, and grounds, persons violating the rules and regulations that may be prescribed by the board or others under the authority of the board.
>
> 3. Such officer or employee of the state college or university as may be designated by the board shall have immediate charge, control and supervision of police officers appointed by authority of this section. Such college or university police officers shall have satisfactorily completed before appointment a training course for police officers as prescribed by chapter 590 for state peace officers or, by virtue of previous experience or training, have met the requirements of chapter 590, and have been certified under that chapter. (Emphases added).

**Section 174.709:**

> 1. For the purpose of promoting public safety, health, and general welfare and to protect life and property, the board of regents or board of governors of any state college or university may establish regulations to control vehicular traffic, including speed regulations, on any thoroughfare owned or maintained by the state college or university and located within any of its

7

campuses. Such regulations shall be consistent with the provisions of the general motor vehicle laws of this state. ***Upon adoption of such regulations, the state college or university shall have the authority to place official traffic control signals, as defined in section 300.010, on campus property.***

2. The regulations established by the board of regents or board of governors of any state college or university under subsection 1 of this section shall be codified, printed, and distributed for public use. Adequate signs displaying the speed limit shall be posted along such thoroughfares.

3. Violations of any regulation established under this section shall have the same effect as a violation of municipal ordinances adopted under section 304.120, with penalty provisions as provided in section 304.570. Points assessed against any person under section 302.302 for a violation of this section shall be the same as provided for a violation of a county or municipal ordinance.

4. The provisions of this section shall apply only to moving violations. (Emphasis added.)

## Section 174.712:

All motor vehicles operated upon any thoroughfare owned or maintained by a state college or university and located within any of its campuses shall be subject to the provisions of the general motor vehicle laws of this state, including chapters 301, 302, 303, 304, 307, and 577. Violations shall have the same effect as though such had occurred on public roads, streets, or highways of this state.

Subsequently on February 7, 2014, almost five months after Jewell's arrest, the

Board adopted the following Resolution #9101 pursuant to the new provisions passed by

the legislature:

Pursuant to Mo. Rev. Stat. § 174.709, the Board hereby reasserts its intent to establish regulations to control vehicular traffic on campus. **In** so doing, it hereby re-adopts the resolutions it has previously passed that affect the current traffic and parking regulations governing the campus, including any delegation authority conferred by the Board upon University personnel to alter, amend, or rescind the same.

8

A printed copy of the University's current Parking and Traffic Policies shall be made available upon request at the University Police Department. The current Parking and Traffic Policies are published at http://www.nwmissouri.edu/police/parking/index.htm.

We need not address whether the belated re-adoption of the regulations by the Board prohibited the campus police officer from stopping Jewell because there is no evidence that the stop signs at issue were properly authorized and placed pursuant to any regulation passed by the Board. The legislature gave the Board the authority to create traffic regulations yet there is nothing before us to indicate that the Board ever exercised its authority to identify intersections where stop signs were needed, to determine speed limits at any particular location or on any particular street, or passed a regulation identifying and approving them as such. In contrast, there is evidence before us that when the Board passed proposed parking regulations, it specifically approved a detailed campus map that identified placement of student, faculty and visitor parking, meter parking, disabled parking and emergency parking.

Here, the critical regulation that is missing is one that similarly identifies the applicable traffic regulation which was to be applied to this intersection. Neither the trial court, nor this court can take judicial notice of the regulations of the University. *Mullenix*, 73 S.W.3d at 37. Without an adopted regulation placed into evidence that exhibits the Board's exercise of its authority over stop signs located at these particular locations, we cannot find that these stop signs constituted official traffic control devices. *McDonald*, 170 S.W.3d at 539. And while we are unaware whether such regulation exists in the Board's records, we cannot consider it unless it is in the record before us.

9

*See City of Perryville v. Brewer*, 557 S.W.2d 457, 460 (Mo. App. E.D. 1977) (we may not consider facts outside the record unless they are subject to judicial notice; municipal ordinances are generally not judicially noticed and must be proven like any other fact). As we noted in *McDonald*, "it is self evident that, if challenged, the State must allege and provide evidence at the suppression hearing that an actual violation of the law occurred." *Id.* at 538.

Although the State argues that the legislature addressed campus traffic regulations with amendments to sections 174.700 and 174.703 and with the passing of sections 174.709 and 174.712, all of those statutes authorize the Board to act and are predicated on an assumption that the Board has actually exercised its authority by passing the regulations that it desires to enforce. Indeed, section 174.709.1 states that "[u]pon adoption of such regulations, the state college or university shall have the authority to place traffic control signals, as defined in section 300.010, on campus property." Without evidence of any regulation dealing with the approved placement of stop signs on campus, we must conclude, as we did in *McDonald*, that "the record reveals no evidence that the traffic control device was placed pursuant to or authorized by any legal authority." *Id.* at 539.

For these reasons, Point I is denied.

**Point II**

In Point II, the State argues that even if section 174.709 required the re-adoption of the University's traffic regulations before they could go into effect on campus, the trial

court still erred in its suppression order because the stop was permissible pursuant to sections 174.120 and 174.700.

Because we have found that the record does not contain evidence that the Board ever passed a regulation approving the placement of the stop sign in question, nor of any stop signs on campus for that matter, our analysis of Point I is dispositive with regard to Point II. If the validity of the stop sign is not proven with a properly adopted regulation reflecting the Board's establishment of a stop sign at either location, then the stop was not permissible. In this regard, we agree with the trial court, and with our holding in *McDonald*, that "we cannot assume, nor could the motion court, that a street sign erected on Northwest's campus was 'placed in accordance with the provisions of the law' without some evidence indicating that it was placed pursuant to law." *Id.* at 539. Here, the missing evidence is a regulation passed by the Board that identifies and approves of the placement of either of the stop signs in question.

Point II is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

11